**FAR EAST MACHINERY CO., LTD., Plaintiff,**

v.

**UNITED STATES, Defendant,**

**Atcor, Inc., Sawhill Tubular Div., Cyclops Corp., and Wheatland Tube Corp., Defendants–Intervenors.**

**Court No. 87–01–00003.**

United States Court of International Trade.

Oct. 24, 1988.

Davis, Wright & Jones, David Simon, Washington, D.C., for plaintiff.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Jeanne E. Davidson, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

Schagrin Associates, Roger B. Schagrin, R. Alan Luberda and Paul W. Jameson, Washington, D.C., for defendants-intervenors.

## OPINION AND ORDER

RESTANI, Judge:

Defendant-intervenors, Atcor, Inc., et al. (ATCOR) challenge the final results on remand of the first administrative review of an antidumping duty order issued by the United States Department of Commerce, International Trade Administration (ITA). The primary issue raised by defendant-intervenors is whether ITA erred in its less than fair value (LTFV) determination by allowing plaintiff FEMCO a duty drawback adjustment. Defendant-intervenors claim ITA erred in allowing the adjustment because plaintiff has not shown a "sufficient link" between duties paid on coil suitable for incorporation into the exported pipe and the rebated Taiwanese import duties. In addition, defendant-intervenors claim that ITA erred in not allocating the rebate received over plaintiff's worldwide exports of the subject product and in determining the scrap rate used in calculating the adjustment.

## BACKGROUND

On May 7, 1984, ITA published its antidumping duty order in the matter of *Circular Welded Steel Pipes and Tubes from Taiwan*, 49 Fed.Reg. 19,369. Plaintiff FEMCO, though not a participant in the ITA's original investigation of sales at LTFV, produced merchandise which was subjected to an antidumping duty rate of 9.7 percent, the rate set for "all other manufacturers/producers/exporters" of covered steel products from Taiwan. *Id.* On September 6, 1985, plaintiff requested permission to participate in ITA's first annual review.[1] As a result of this review, ITA announced a final determination of a 41.22 percent dumping margin for plaintiff. *Circular Welded Steel Pipes and Tubes from Taiwan*, 51 Fed.Reg. 43,946 (Dec. 5, 1986) (final determination). In making its prelim-

---

1. Plaintiff requested this first administrative review under ITA's new rules which, in accordance with section 611(a)(2)(A) of the Trade and Tariff Act of 1984, provided for administrative reviews upon request, rather than as a matter of course. 19 U.S.C. § 1675 (1982 & Supp. IV 1986); *see* 19 C.F.R. § 353.53a (1987).

inary determination ITA disallowed plaintiff's claimed adjustment for import duty drawback (which according to plaintiff reflected the rebated Taiwanese import duties it had paid), because the claim was "insufficiently substantiated." *Circular Welded Steel Pipes and Tubes from Taiwan,* 51 Fed.Reg. 29,954 (Aug. 21, 1986). In the final determination, ITA noted that "a significant portion of the margin was due to the inadequacy of FEMCO's submission...." 51 Fed.Reg. 43,946, 43,948 (Dec. 5, 1986).

In January 1987, plaintiff FEMCO challenged the ITA determination before this court. Plaintiff claimed that it had substantiated its claim for duty drawback adjustment and that FEMCO's submissions satisfied the two-prong test which ITA uses to make its duty drawback determinations. At oral argument, plaintiff specifically referred to "Attachment F,"[2] a document included in FEMCO's September 29, 1986 submissions to ITA. ITA indicated in a subsequent submission that it did not focus upon this document in reaching its final results.

For reasons more fully explained in *Far East Machinery Co. v. United States,* 12 CIT ——, 688 F.Supp. 610 (1988), this court remanded the case to ITA with instructions to consider the information contained in Attachment F in its review of plaintiff's dumping margins. In its remand determination, ITA found that plaintiff was entitled to a duty drawback adjustment, and a corresponding dumping margin of 12.30 percent.

Defendant-intervenors, now challenge that result arguing primarily that ITA erred in granting FEMCO an adjustment for duty drawback because "FEMCO has not shown that a 'sufficient link' exists between the duties paid on coil suitable for incorporation into the exported pipe and the rebate granted on that pipe." Defendant-intervenors' Brief at 1.

## DISCUSSION

ITA has articulated a two-prong test to determine whether a party is entitled to a drawback adjustment to its United States price:

First, that the import duty and rebate are directly linked to, and dependent upon, one another.

Second, that the company claiming the adjustment can demonstrate that there were sufficient imports of imported raw materials to account for the duty drawback received on the exports of the manufactured product.

ITA, "Study of Antidumping Adjustments Methodology and Recommendations for Statutory Change" 26–27 (Nov. 1985) (1985 Adjustment Study); *Carlisle Tire & Rubber Co. v. United States,* 11 CIT ——, 657 F.Supp. 1287 (1987).[3]

The first prong of this test requires ITA to analyze whether the foreign country in question makes entitlement to duty drawback dependent upon the payment of import duties. This court in *Roquette Freres v. United States,* 7 CIT 88, 92, 583 F.Supp. 599, 603 (1984) held that no adjustment is proper when the payment of import duties is not a precondition to a refund upon export. *See also Tapered Journal Roller Bearings and Parts Thereof from Italy,* 49 Fed.Reg. 2,278, 2,280 (Comment 5) (Jan. 19, 1984) (where rebates may be received absent payments of duties, the fact that the firm under investigation actually paid duties and received a rebate is irrelevant).

The second prong of the test requires the foreign producer to show that it has imported a sufficient amount of raw materials (upon which it has paid import duties) to

the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the merchandise to the United States.

**2.** Attachment "F" demonstrated that FEMCO had imported requisite amounts of coil compatible with the circular welded steel pipes and tubes which FEMCO exported to the United States.

**3.** Presumably this test is intended to comport with 19 U.S.C. § 1677a(d)(1)(B) (1982) which provides for increasing United States price by:

account for the exports, based on which it is claiming rebates. Under this prong, the duty drawback adjustment to United States price is limited to the amount of import duty actually paid. Though there is no requirement that specific input be traced from importation through exportation before allowing drawback on duties paid, *see* 1985 Adjustment Study, at 26, in this case ITA determined that the producer must establish that the imported product addressed by the quantity test of the second prong is suitable for use in the exported product occasioning the rebate. ITA found upon remand that plaintiff imported a sufficient quantity of coil of the correct specification during the appropriate period to make the pipe which was exported, and for which pipe duties were refunded.

Although the two prongs of ITA's test are set out independently of one another,[4] until relatively recently neither plaintiff nor defendants articulated their arguments so as to clearly identify the prong of the test to which they are referring. ITA has now resolved, based on Attachment F, that plaintiff satisfied the second prong of the test. This no longer appears to be an issue; attention is now focused on the first prong.

### Duty Payment as a Prerequisite for Drawback

■ Defendant-intervenors argue that ITA has erred in granting an adjustment to U.S. price for drawback of duties because the Taiwanese duty drawback program for pipe does not require as a prerequisite for refund, payment of duties on coil of the exact specification suitable for the standard pipe at issue. Defendant-intervenors assert that the issue is "not in any way resolved by the fact that FEMCO coincidentally did import enough coils of the appropriate size, grade, type and quality to cover its exports of the standard pipe under review to the United States." Defendant-intervenors' brief at 4. As a basis for its argument, defendant-intervenors allege that the duties which were rebated by Taiwan upon FEMCO's exportation of the standard pipe under review in this case, were actually paid on coils which could not have been used to produce the particular type of pipe exported. Thus, according to defendant-intervenors there was no link between either the duties paid on imported coils and the rebate payment, or between those coils and the pipe exported. *Id.*

Defendant-intervenors, however, have cited very little to support their allegation that the Taiwanese system does not meet the linking requirements of the first prong of the ITA test.[5] In fact, all parties seem to agree that Taiwan does require a producer to demonstrate that a nexus exists between import duties paid and export rebates received. The documentation submitted supports the conclusion that in order to receive a full rebate upon export of steel pipe an exporter must show that it has imported quantities of "steel coil" equal to the tonnage of pipe exported plus the tonnage expected to become scrap during manufacturing.[6] It does not appear to be coincidental that plaintiff paid duties on steel coil in order to get a rebate upon exported steel pipe. There was a link between payment of duties on coil and refund

---

**4.** The first prong requires a systematic analysis of a country's export rebate system, while the second prong looks towards the behavior of the individual producer.

**5.** Defendant-intervenors refer to the Public Record Document Number 90 (PR) at 614–655, and the Confidential Record Document Number 12 (CR) at 498A–582A as support for their assertions. Ostensibly they show that plaintiff received a rebate when the documentation it presented to the Taiwanese government showed payment of duties on coil of a different specification than that actually usable in the export.

**6.** Plaintiff's counsel alleges that the Taiwanese government, in determining import duty rates, uses broader tariff classification categories than does the United States. If in the Taiwanese system steel coil is not broken down by particular grades, but rather a duty is set based upon its characterization as "steel coil" there would be little opportunity for Taiwan Customs to make the distinction defendant-intervenor believes should be made. This is not explained in the record. Whether this particular fact is true or not, the Taiwanese system does appear to require a certain type of linkage between import duties paid and export duties rebated, although it would appear to be a broad-based linkage.

of duties on pipe. The issue now in dispute is whether the linkage requirement in the Taiwanese system is so broad as to render it a nullity in relation to the United States trade laws.

In *Huffy Corp. v. United States,* 10 CIT ——, 632 F.Supp. 50, 53 (1986) the court held that it is not sufficient that a producer pay import duties upon raw materials and then receive a corresponding rebate upon the exportation of the finished product. Instead, a foreign country must make payment of import duties a prerequisite to receipt of an export rebate in order to qualify for an adjustment to U.S. price under 19 U.S.C. § 1677a(d)(1) (1982). With regard to bicycles to which rebates were calculated based on average rates of use of imported parts, the *Huffy* court stated, "[a]n allocation of import duties may give rise to an adjustment to United States price provided import duties are actually paid and rebated, and there is a sufficient link between the cost to the manufacturer (import duties paid) and the claimed adjustment (rebate granted.)" 632 F.Supp. at 53.

In the present case, defendant-intervenors argue that Taiwan's linkage requirement, as applied to the steel pipe involved here, is so broad as to be functionally non-existent. Defendant-intervenors assert that under the Taiwanese rebate program it would not matter on what type of goods FEMCO paid import duties; upon exportation of the pipe in question, FEMCO would receive a rebate from Taiwan, as long as it had paid *some* duties. The court finds no support for this allegation in the record. Although the linkage requirement in Taiwan as it applies to steel pipe seems to be broad, defendant-intervenors have pointed to no evidence of record establishing that the Taiwanese system is a sham. ITA has considered the Taiwanese rebate system in the context of trade on other products on several occasions, and has de-termined on a consistent basis that the system satisfies the standard for allowing drawback adjustments to U.S. price. *See, e.g., Motorcycle Batteries from Taiwan,* 47 Fed.Reg. 9,264 (Mar. 4, 1982); *Bicycle Tires and Tubes from Taiwan,* 48 Fed. Reg. 19,437 (Apr. 29, 1983); *Bicycles from Taiwan,* 48 Fed.Reg. 31,688 (Jul. 11, 1983); *Color Television Receivers from Taiwan,* 49 Fed.Reg. 7,628 (Mar. 1, 1984). *Acrylic Film, Strips and Sheets, at Least 0.030 Inch in Thickness from Taiwan,* 49 Fed. Reg. 10,968 (Mar. 23, 1984).

That ITA has decided in the past that the Taiwanese system meets the linkage requirements of 19 U.S.C. § 1677a(d)(1)(B) does not mean, however, that parties before ITA in any particular case may not assert that ITA's past assessment of the Taiwanese system is incorrect or that the analysis is not appropriate to the system as applied to a particular product type. If in the future the record before ITA demonstrates that the Taiwanese system does not require an appropriate link, or that the link is so broad as to render it useless, ITA should be willing to reassess its view of the system in light of the requirements of the antidumping law. Based on the record in this case, however, the court cannot hold that ITA erred in finding the linkage requirement satisfied by a system which allows some latitude in matching of specifications of imports and exports, in an industry where various sizes and types of pipe are made by the same manufacturers.

Moreover, if in fact defendant-intervenors are arguing impliedly that the Taiwanese export rebate system is merely a sham for export subsidization, or results in excessive rebates because of lack of adequate controls, such an allegation is properly made in the context of a countervailing duty case, not the present antidumping duty suit.[7] Antidumping proceedings focus

---

7. A similar argument was made to ITA in *Stainless Steel Cooking Ware from Taiwan,* 51 Fed. Reg. 42,882 (Nov. 26, 1986). In that investigation, petitioners argued that foreign producers were receiving excessive import duty remissions, and, therefore, ITA should limit respondent's duty drawback adjustment to amounts rebated on imported raw material ac-tually incorporated into the exported merchandise. ITA found petitioners' argument to be essentially a subsidies argument which it could not properly consider in an antidumping investigation. *Id.* at 42,884. ITA did determine, however, in a parallel countervailing duty investigation (CVD) that Taiwan was granting excessive remissions of import duties to the exporters

on costs and price. Only cost elements which FEMCO can demonstrate are related to its U.S. sales may be added to the United States price. When FMV is based on home market price, as in the present case, price comparability is maintained by the addition of drawback to U.S. price, since receipt of duty drawback on goods exported to the United States, allows the seller to charge a lower price on exports than the price charged on home market sales, without practicing price discrimination. As this court said in *Huffy Corp. v. United States,* 10 CIT ——, 632 F.Supp. 50, 55–56 (1986):

> the court and the ITA should refrain from making a subsidy determination in the context of a dumping investigation. The determination of whether a countervailable subsidy exists is a complex one and Congress has provided a separate set of guidelines for the inquiry. In a dumping investigation the ITA is not seeking the same information or asking the same questions it would in a countervailing duty investigation. For this Court to disallow an adjustment to third country price because the import duty rebate is allegedly a countervailable subsidy would be to bypass the countervailing duty statute and essentially penalize the Taiwanese exporters without allowing them an opportunity at the agency level to have a full hearing on whether the rebates are a subsidy.

Plaintiff FEMCO received an export credit from the Taiwan government, whose rebate system ITA has found to link import duties and export rebates sufficiently.[8] FEMCO should not be found to be dumping

its goods in the United States merely because it prices those goods in accordance with import duty rebates it receives from Taiwan. "The antidumping remedy protects domestic industry from imported merchandise sold at less than fair value, which imports either have caused or threaten to cause material injury." *Al Tech Specialty Steel Corp. v. United States,* 10 CIT ——, 651 F.Supp. 1421, 1429 (1986) (citing *Badger–Powhatan Div. of Figgie Intern., Inc. v. United States,* 9 CIT 213, 608 F.Supp. 653, 656–57 (1985)). "Countervailing duty law, in contrast, was enacted specifically to address the market distortions caused by subsidization." *Id.* 651 F.Supp. at 1430 (citing *Zenith Radio Corp. v. United States,* 437 U.S. 443, 455–56, 98 S.Ct. 2441, 2448, 57 L.Ed.2d 337 (1978)). If the defendant-intervenors believe that Taiwanese exporters are in fact receiving a subsidy from the Taiwan government because of the broad based linkage utilized by Taiwan, defendant-intervenors may allege this argument in a countervailing duty petition.

■ Nonetheless, ITA is not limited to accepting the full value of the "rebate" as an adjustment under 19 U.S.C. § 1677a(d)(1)(B), even if there is some linkage and even if the requisite import duties were paid on suitable goods. That is, in deciding what the proper adjustment should be when the linkage is broad-based ITA may make its own determination as to how much of the rebate reflects actual cost elements of the product under investigation, that is, how much actually represents drawback.[9] As this task presents potential

---

under investigation. *See Stainless Steel Cooking Ware from Taiwan,* 51 Fed.Reg. 42,891 (Nov. 26, 1986). (Final Countervailing Duty Determination). As a result of the CVD investigation, ITA limited respondents' duty drawback adjustment to that part of the Taiwanese rebate which was non-excessive. *See* 51 Fed.Reg. 42,882. The court is unaware of what particular controls may exist in the Taiwanese system to avoid subsidization other than the need to document payment of duties before a rebate is granted.

**8.** *See supra* discussion.

**9.** When plaintiff exported the steel pipe at issue in this case to the United States, it received an export rebate from Taiwan for coil which allegedly could not be utilized in the subject steel

pipe. As mentioned previously in this decision, however, plaintiff did submit evidence showing that it had imported the requisite amount of coil which could have been used in the exported pipe. Because the actual amount rebated by Taiwan was not based upon import duties paid on the matching coil, however, ITA constructed a rebate adjustment figure which was smaller than that received by plaintiff on the exports. One might argue that had ITA followed its methodology in *Stainless Steel Cooking Ware, see supra* note 7, it would have required a separate determination as to whether the rebate was excessive. Plaintiff has not challenged the remand result on this or any other basis. Adjusting the rebate downward benefits defendant-intervenors.

for overlapping with countervailing duty decision-making ITA must exercise some discretion in determining how wide a search it will make in order to arrive at a proper adjustment.

In the case at hand ITA decided to limit its investigation to that information it had previously obtained from plaintiff and to calculate the adjustment on the basis of this information.[10] The result of this was that plaintiff received a smaller adjustment than the rebate it actually received from the Taiwanese government on the exported goods. Nonetheless, defendant-intervenor argues that, assuming any adjustment may be allowed, the adjustment was not made utilizing a proper methodology. It argues that to calculate a proper United States price adjustment under the circumstances at hand ITA should have investigated whether FEMCO exported the subject pipe to other countries and ITA should allocate the rebatable duties over the totality of such exports.[11] Assuming *arguendo* that some type of adjustment would be permissible, defendant asserts that had ITA required plaintiff to document total exports of the pipe at issue as well as total suitable imports of the requisite coil, ITA would have had a sound basis for an adjustment to plaintiff's United States price.[12] Defendant-intervenor's proposed methodology, however, begins to approach the type of investigation which is suitable to determining whether subsidies are provided rather than whether dumping occurred.

ITA must have some discretion to draw an appropriate line under various fact patterns between the various types of investigations it performs. ITA has exercised such discretion in this case and determined that the type of information collected here, that is, the type normally collected in an antidumping case was sufficient, and that the Taiwanese export rebate system as regards "steel pipe" is adequate to allow an adjustment to United States price under the antidumping laws. ITA further required plaintiff to prove that it had imported a sufficient amount of the coil subject to duties which was suitable for incorporation into the pipe at issue. It then calculated an adjustment amount based on the appropriate coil. ITA's method seems reasonably calculated to arrive at a proper adjustment to price under the facts of record. A review of the record also reveals ITA's approach is not an unfair way of proceeding in this case. As the methodology is not out of the realm of reason the court will not compel ITA to open the record to undertake an investigation that none of the parties saw as a necessary step until the original record was closed.[13] Had defendant-intervenor's objections to ITA been more focused perhaps ITA's requests to plaintiff would have been clearer, so that the current complaints would not have arisen. It is also possible that ITA should tighten its standards for permitting the type of adjustment at issue, but to alter those standards for this plaintiff is not necessary in order for the determination at issue to meet the less than clear standard of the antidumping law on this point and in order to enforce those laws fairly.

### Calculation of Adjustment Based on Scrap Rate

■ In addition to arguing that ITA misapplied the first prong of its two prong test or that ITA should reopen its investigation to perform an allocation analysis, defendant-intervenors also assert that ITA erred in determining the appropriate scrap rate

---

**10.** ITA expressed no reason for limiting its investigation other than its view that it had sufficient data to make an adjustment.

**11.** This argument was made in defendant-intervenor's comments after the original record was decreed closed, but the statement was accepted as fair comment on plaintiff's last submission.

**12.** In most drawback substitution situations, there is potential for skewing antidumping calculations by granting excessive rebates or other-

wise, including in situations where the imports which occasion duties and the exports which result in rebates are more closely matched. Apparently ITA does not go to the length of investigating world-wide exports of a product in such situations.

**13.** As far as the court can determine none of the other producers subjected to duties with regard to the subject pipe faced the kind of strict test defendant-intervenor proposes here.

to utilize in calculating FEMCO's drawback adjustment.[14] According to information supplied in the record, Taiwan typically calculates import rebates by assessing the amount of imported material potentially used in the exported product, then multiplying that amount by an average raw material price for the industry as a whole. In calculating the amount of imported material used in pipe, Taiwan adds an estimated scrap amount to the pipe tonnage. Import rebates are then calculated on this tonnage. The higher the scrap rate the higher the rebate and correspondingly the greater the upward adjustment of plaintiff's calculated United States price.

In the present case, ITA estimated that Taiwan used a 6 percent scrap rate when calculating the amount of import rebate to give plaintiff upon the exportation of the steel pipe at issue in this case. Defendant-intervenors argue that ITA erred in using a 6 percent rate, as the scrap rate Taiwan would have used was only 5 percent. This court must now decide whether ITA's use of a 6 percent scrap rate was reasonable and in accordance with law.

Although it might have been preferable for ITA to use the actual scrap rates utilized by Taiwan rather than calculating it from other information, ITA was not required to open the record in order to investigate such a rate.[15] ITA's decision not to open the record was reasonable in light of the information which was available in the record, the piecemeal manner of presentation of the parties' arguments in this case, and the general statutory requirements of administrative expediency and finality. *See Smith–Corona Group v. United States*, 713 F.2d 1568, 1576 (Fed.Cir.1983) (The 1979 Act "shortened the time limits governing dumping determinations, man-

dating greater speed and, consequently, the necessity for using readily available, reliable information in the computation of duties.")

In conclusion ITA based its determination of the scrap rate used in its calculation of FEMCO's duty drawback adjustment upon information available to ITA in the record.[16] ITA's decision to do so was reasonable.

Accordingly, the court finds that ITA's determination after remand that plaintiff FEMCO is entitled to its requested duty drawback adjustment to its United States price pursuant to 19 U.S.C. § 1677a(d)(1)(B) (1982), is supported by substantial evidence on the record and is in accordance with law. Defendant-intervenors' requested relief is therefore denied in its entirety and ITA's remand determination is sustained.

### JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED: that the determination in the above-captioned case by the United States Department of Commerce, International Trade Administration, is affirmed.

---

**14.** Defendant-intervenors suggest a 1% reduction in the scrap rate is appropriate.

**15.** Defendant-intervenors assert that ITA could have used documents contained in the public record of a subsequent case which demonstrated that Taiwan's official scrap rate for the subject coil was 5 percent. Although ITA can utilize information contained in its own public records, it is not required to use information which has not been verified, nor appropriately commented upon by the relevant parties, just

because it could be included in the record easily.

**16.** ITA calculated the scrap rate by comparing the import duty paid on FEMCO's referenced import license with the actual amount rebated. From this information ITA calculated a rate which it estimated the Taiwan authorities used in determining the appropriate duty drawback amount to be rebated.