**HUFFY CORPORATION, et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**Taiwan Transportation Vehicle Manufacturers Association, Defendant-Intervenor.**

No. 83–8–01180.

United States Court of International Trade.

March 27, 1986.

Collier, Shannon, Rill & Scott (Michael R. Kershow and Lauren R. Howard, Washington, D.C., on motion), for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Velta A. Melnbrencis, New York City, on motion), for defendant.

Plaia & Schaumberg, Chartered (Herbert C. Shelley, Joel D. Kaufman, and George W. Thompson, Washington, D.C., on motion), for defendant-intervenor.

## MEMORANDUM OPINION

CARMAN, Judge:

Before the Court is plaintiffs' Rule 56.1 motion for judgment upon the agency record challenging the final determination of the United States Department of Commerce, International Trade Administration (ITA) of sales at less than fair value in *Bicycles from Taiwan,* 48 Fed.Reg. 31,688 (1983). Defendant opposes the motion, as does defendant-intervenor Taiwan Transportation Vehicle Manufacturers Association. All parties have submitted comprehensive briefs and the record is quite extensive.

The ITA investigated sixteen Taiwanese bicycle manufacturers and found that eleven of them either had no sales or *de min-*

*imis* sales at less than fair value. These eleven firms were thus excluded from the ITA's final determination. Plaintiffs argue that these eleven should not have been excluded, and that dumping margins should have been higher as to the remaining five. Plaintiffs claim that the ITA erred in four areas of its determination. Plaintiffs argue that: (1) the ITA improperly adjusted the United States price by adding a 4.71 percent import duty rebate; (2) the ITA improperly adjusted the United States price by adding a 4 percent harbor dues rebate; (3) the ITA should have conducted an investigation of below-cost sales in the home market; and (4) the ITA should have commenced a countervailing duty investigation based on information uncovered in the course of the antidumping investigation. For reasons given below, the agency determination is sustained.

## I. Adjustment to United States Price for 4.71 Percent Import Duty Rebate

The Tariff Act of 1930 (Act), as amended, requires the assessment of an antidumping duty whenever it is determined that "foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value," and such sales injure or threaten injury to an industry in the United States. 19 U.S.C. § 1673 (1982). To determine whether merchandise is sold in the United States at less than fair value, the statute calls for a comparison between the price of the merchandise in the United States and its price in a foreign market (either the home market or a third country, or a constructed price). The statute provides that a duty be assessed based upon that comparison:

> [T]here shall be imposed upon such merchandise an antidumping duty ... in an amount equal to the amount by which the foreign market value exceeds the United States price....

19 U.S.C. § 1673.

The comparison of the two prices must take into account different circumstances of sale involved in the United States and the foreign market. The Act provides for adjustments to the prices to reflect these differences, ensuring that the final comparison is as free as possible from costs or benefits specific to each market.

Section 772 of the Act, Pub.L. No. 96–39, Title 1, § 101, 93 Stat. 181 (1979) (codified at 19 U.S.C. § 1677a (1982)), describes the method by which the ITA is to arrive at the United States price. The section first describes United States price as "the purchase price, or the exporter's sales price, of the merchandise, whichever is appropriate." 19 U.S.C. § 1677a(a). The section then provides for certain adjustments to the United States price. Relevant here is the adjustment for import duty rebates:

> The purchase price and the exporter's sale price shall be adjusted by being—
>
> (1) increased by—
>
> .   .   .   .   .
>
> (B) the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the merchandise to the United States.

19 U.S.C. § 1677a(d)(1)(B). Congress allowed this adjustment because purchasers in the home market presumably must pay the passed on cost of import duties when they buy the merchandise. If the duties are rebated when the merchandise is exported, presumably no similar cost is passed on to purchasers in the United States. By adding the amount of the rebate to United States price this adjustment accommodates the difference in cost to the two different purchasers.

In this case the ITA allowed an upward adjustment in United States price based upon an import duty rebate granted by Taiwan to bicycle producers. The import duty rebate was 4.71 percent of the "domestic value added;" that is, "the difference between the f.o.b. value of the finished bicycle and the c.i.f. value of the components imported directly by the bicycle manufacturers themselves." 48 Fed. Reg. at 31,689. The rebate's purpose was to refund, upon exportation, the import duties that domestic parts manufacturers

paid on imported raw materials and passed on to bicycle manufacturers. To arrive at the 4.71 percent rebate, the Taiwanese. authority first analyzed the amount of specific imported raw materials in an average bicycle. Referring to the duty rate record for those materials, it calculated the duty paid by Taiwanese parts producers, and presumably passed on to bicycle manufacturers, on an average bicycle. The Taiwanese authority then compared the amount of duty paid on the raw materials in an average bicycle to the domestic value of an average bicycle to arrive at the 4.71 percent rebate amount.

■ The Taiwanese program is essentially an allocation scheme in which the cost of import duties on raw materials is allocated to each bicycle, based upon that bicycle's domestic content. An allocation of import duties may give rise to an adjustment to United States price provided import duties are actually paid and rebated, and there is a sufficient link between the cost to the manufacturer (import duties paid) and the claimed adjustment (rebate granted).

This court first established the two-part requirement of actual cost to the manufacturer and sufficient link between that cost and the claimed adjustment in *F. W. Myers & Co. v. United States,* 72 Cust.Ct. 219, C.D. 4544, 376 F.Supp. 860 (1974). In that case, this court sustained the ITA's denial of an adjustment to foreign market value for overhead costs under a provision for adjustments for "differences in circumstances of sale." 19 U.S.C. § 161(b)(2) (1976) (repealed). The manufacturer sought an adjustment for overhead expenses relating to sales in the home market but not the United States market. The court first noted that the manufacturer could not lump overhead costs together with selling expenses in "a stewpot labeled 'differences in circumstances of sale.'" 72 Cust.Ct. at 233, 376 F.Supp. at 872. Instead, the court ruled, a manufacturer must show "that each claimed expense had a reasonably direct effect upon the sales in the market under consideration." *Id.*

The court found further that even had the manufacturers established a link between the alleged costs and the home market sales, it had failed to prove that the costs were actually incurred. The court stated that

a basic concept of all value determinations by the court is that they must be based upon proof of *actual* costs or prices—*not* estimates, approximations or averages. Thus, use of percentages in calculating expenses or profits will be rejected if they are not based upon *actual amounts* of expenses incurred or profits added.

*Id.* at 234, 376 F.Supp. at 873 (citations omitted).

This court again considered an adjustment to foreign market value for differences in circumstances of sale in *Brother Industries, Ltd. v. United States,* 3 CIT 125, 540 F.Supp. 1341 (1982), *aff'd sub nom. Smith-Corona Group v. United States,* 713 F.2d 1568 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). The court there upheld an adjustment based upon an incentive rebate that the typewriter manufacturers gave to retailers in the foreign market but not the United States market. The manufacturers based the rebate amounts on total sales, which included merchandise other than the typewriters under investigation, and various models of the typewriters under investigation. Based on the percentage of sales of typewriters under investigation to total sales, and the percentage of each model to the total sales of typewriters, the ITA allocated a cost to the manufacturers for each typewriter sold. The court approved the ITA's method of allocating costs to arrive at the adjustment, stating:

*F. W. Myers* teaching does not preclude the administering authority from allocating or apportioning *actual* costs among the various items to which they are attributable.

3 CIT at 149, 540 F.Supp. at 1363.

These cases involved adjustments to foreign market value for differences in cir-

cumstances of sale.[1] In *Roquette Freres v. United States*, 7 CIT ——, 583 F.Supp. 599 (1984), this court applied the same rule to a case specifically involving an adjustment to United States price based on import duty rebates. In that case, the European Economic Community (EEC) levied a duty on corn imports, and granted an "export restitution payment" on exported products containing corn. The ITA determined that this payment was not allowable as an adjustment under 19 U.S.C. § 1677a(d)(1)(B):

> The "import levy" and the "export restitution payments" are not directly linked to, or dependent upon, one another within the context of EC regulations. The exporters may receive these payments regardless o[f] whether or not they imported corn and paid the "import levy."

*Sorbitol From France*, 47 Fed.Reg. 6,459, 6,460 (1982). This court affirmed the ITA's determination in *Roquette Freres*, 7 CIT ——, 583 F.Supp. 599 (1984), agreeing that the rebates were not directly related to the firm's payment of import duties.

> Whenever a French manufacturer exports a product containing corn, the aforerecited EC regulation provides for the payment of an export refund regardless of (1) whether or not the firm used imported corn, and (2) whether or not the firm paid any import levies.

7 CIT at ——, 583 F.Supp. at 602.

The court thus applied the rule for adjustments based on differences in circumstances of sale to adjustments for import duty rebates. As applied in this context, the rule is that the import duty must actually have been paid and rebated (or waived), and there must be a sufficient link between the payment and the rebate.

■ The ITA determined that both these conditions were satisfied by the Taiwanese rebate program. *See* 48 Fed.Reg. at 31,690. Although the Court will defer to the agency's expertise in these technical areas, the Court must still carefully review the agency's determination, under the appropriate standard, to ensure that it conforms to statutory requirements. *Rhone-Poulenc, S.A. v. United States*, 8 CIT ——, 592 F.Supp. 1318, 1334 (1984). This Court will uphold the ITA's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1982). Plaintiffs contend that the ITA's final determination, based in part on an adjustment to United States price for import duty rebates, is unsupported by substantial evidence because there is no evidence in the record that domestic parts producers paid any import duties on raw materials, nor is there evidence that the 4.71 percent rebate is linked to actual payment of import duties.

■ The only evidence in the record that supports the ITA's conclusion that Taiwanese bicycle parts producers actually paid import duties and that the payment of those duties is directly linked to the 4.71 percent import duty rebate granted bicycle manufacturers is the Taiwanese authority's general description of how it arrived at the rebate amount. *See* Record at 946–48. There is no further evidence showing actual payment by parts producers of import duties or amount of raw materials actually imported, nor is there further evidence showing the quantity of raw materials actually contained in an average bicycle. Thus the Court must determine whether the assertion of the Taiwanese authority that import duties were actually paid and that there is a direct link between their payment and the 4.71 percent rebate is sufficient to support the ITA's finding that those facts existed.

The "substantial evidence" standard of review has been well explicated by this

---

1. 19 U.S.C. § 1677b(a)(4)(B) provides that:

> In determining foreign market value, if it is established ... that the amount of any difference between the United States price and the foreign market value ... is wholly or partly due to—
>
> (B) other differences in circumstances of sales
>
> then due allowance shall be made therefor.

court in prior decisions. *See, e.g., Carlisle Tire and Rubber Co. v. United States,* 9 CIT ——, 622 F.Supp. 1071 (1985). It is "essentially a limited review of the agency determination, insuring that agency conclusions are reasonably drawn from some evidence, more than a mere scintilla, in light of the record as a whole." *Alhambra Foundry v. United States,* 626 F.Supp. 402, at 407 (1985). While the Court might draw a different conclusion from the evidence in the record, the applicable standard of review does not permit the Court to substitute its judgment for that of the agency. The record contains a general description of the Taiwanese rebate program, provided by the Taiwanese authority. The ITA accepted this as evidence that import duties actually were paid by domestic parts producers and accurately allocated to export bicycles. The Court finds that the Taiwanese authority's description of the plan was sufficient evidence from which the ITA could reasonably draw this conclusion.

Plaintiffs further contend that the 4.71 percent import duty rebate is actually a countervailable subsidy and that Congress did not intend dumping margins to be decreased by adjustments based upon countervailable subsidies.[2] Plaintiffs note that Congress intended the antidumping and countervailing duty statutes to work together; for example, the antidumping statute provides an adjustment to United States price in the form of an addition for countervailing duties imposed. *See* 19 U.S.C. § 1677a(d)(1)(D) (1982). It would defeat the purpose of the countervailing duty law, plaintiffs argue, if we allow an addition to the United States price for a rebate program that constitutes a countervailable subsidy.

To support their argument, plaintiffs point out that 19 U.S.C. § 1677a(d)(1)(C) provides an adjustment for tax rebates only if the tax is one directly upon the merchandise, that is, a so-called "indirect" tax. The Court of Customs and Patent Appeals found that relief from "indirect"

taxes does not amount to a countervailable subsidy, while relief from "direct" taxes—those imposed on the producer rather than the merchandise—does amount to a countervailable subsidy. *American Express Co. v. United States,* 60 CCPA 86, C.A.D. 1087, 472 F.2d 1050 (1973). The legislative history of 19 U.S.C. § 1677a(d)(1)(C) indicates that Congress consciously intended that tax remissions that constituted countervailable subsidies should not be used to reduce dumping margins. *See, e.g.,* Hearings on H.R. 6767 Before the House Comm. on Ways and Means, 93d Cong., 1st Sess. 135 (1973) (White House report).

Plaintiffs reason that if Congress did not intend such direct tax rebates to reduce dumping margins, it also must not have intended to reduce dumping margins by allowing an adjustment for import duty rebates that constitute countervailable subsidies. This reasoning is not persuasive. First, the distinction between direct and indirect taxes is more easily made than the distinction between an import duty rebate that is or is not a countervailable subsidy. More critically, however, Congress did make the distinction between subsidy and non-subsidy tax rebates in section 1677a(d)(1)(C) but made no such distinction regarding import duty rebates in section 1677a(d)(1)(B). The conclusion that must be drawn is *not* that Congress intended the same restriction to apply in the latter section, but rather that it *did not intend* it to apply.

Moreover, there are further reasons the court and the ITA should refrain from making a subsidy determination in the context of a dumping investigation. The determination of whether a countervailable subsidy exists is a complex one and Congress has provided a separate set of guidelines for the inquiry. In a dumping investigation the ITA is not seeking the same information or asking the same questions it would in a countervailing duty investigation. For this Court to disallow an adjustment to third country price because the

---

**2.** Plaintiffs make the same argument with regard to the harbor dues rebate.

import duty rebate is allegedly a countervailable subsidy would be to bypass the countervailing duty statute and essentially penalize the Taiwanese exporters without allowing them an opportunity at the agency level to have a full hearing on whether the rebates are a subsidy.[3]

## II. *Harbor Dues Rebate*

Taiwan assesses a four percent *ad valorem* amount on all dutiable imports, termed "harbor dues." These dues are assessed on bicycle parts directly imported by bicycle manufacturers. Upon the export of completed bicycles containing imported parts, these dues are rebated. The ITA allowed an adjustment to United States price for this rebate under 19 U.S.C. § 1677a(d)(1)(B).

■ Plaintiffs contend that the ITA should not have added the four percent harbor dues rebate to the United States price. Plaintiffs argue first that the harbor dues represent a tax and not an import duty and that therefore the ITA should have conducted an investigation as required in section 1677a(d)(1)(C).[4] That section allows an adjustment to United States price for rebates of indirect taxes, but only if the ITA finds that the cost of the tax is actually passed on in the home market.

In its determination, the ITA stated: Whether the [harbor dues] assessment is considered a "tax" or "duty" is immaterial to the outcome of this investigation. If we treat the assessment as a tax, we would add the rebate to the United States price only to the extent that the tax is reflected in home market price. In this case, harbor dues would be included in the home market price.

48 Fed.Reg. at 31,690. The government continues this theme in its brief, in which it suggests that tax assessments are always passed on in the home market price and therefore their rebate always constitutes a proper adjustment to United States price. If this were true, then the statute's requirement that these rebates create an adjustment only to the extent the cost of the tax is passed on would be meaningless. Statutes should be interpreted in such a way that their parts are harmonized and no part is rendered meaningless. *See Beaver Products Co. v. United States,* 17 CCPA 434, 437, T.D. 43878 (1930). Congress included a special requirement in section 1677a(d)(1)(C) that it did not put in section 1677a(d)(1)(B). We must conclude that Congress recognized that not all taxes are passed on to the home market, and therefore required some showing that such a tax is passed on before its rebate could be the source of an adjustment.[5] To support an adjustment for a tax rebate there must be substantial evidence in the record to support the conclusion that the tax was passed on to the home market.

---

3. Plaintiffs also contend that while no adjustment should be made to United States price based on the import duty rebate, such an adjustment should be made to third country price. Because the Court finds that the adjustment to United States price was proper, it need not address this contention.

4. 19 U.S.C. § 1677a(d)(1)(C) (1982), provides:
The purchase price and the exporter's sales price shall be adjusted by being—
  (1) increased by—

   .    .    .    .    .

(C) the amount of any taxes imposed in the country of exportation directly upon the exported merchandise or components thereof, which have been rebated, or which have not been collected, by reason of the exportation of the merchandise to the United States, but only to the extent that such taxes are added to or

included in the price of such or similar merchandise when sold in the country of exportation ...

5. The House report on the amendment creating the adjustment supports this conclusion:
[A]n adjustment for such [indirect] tax rebates would be permitted only to the extent that such taxes are added to or included in the price of such or similar merchandise when sold in the country of exportation. This is to insure that the rebate of such taxes confers no special benefit upon the exporter of the merchandise that he does not enjoy in sales in his home market. To the extent that the exporter absorbs indirect taxes in his home market sales, no adjustment to purchase price will be made and the likelihood or size of dumping margins will be increased.
H.R.Rep. No. 571, 93d Cong., 1st Sess. 69 (1973).

It is therefore material whether the harbor dues assessment in this case is a tax or an import duty. Plaintiffs contend that it is a tax because its ultimate purpose is to finance harbor services, which the government provides. In its determination, the ITA found that the ultimate purpose for which the assessments were used was not relevant to the issue of whether they were taxes or import duties. The ITA found that the dues assessment was an import duty because (1) it was "assessed in conjunction with other duties and administered in the same manner" and (2) it was not levied on duty-free merchandise.

■ Generally, this court will defer to agency findings in areas where the agency has a particular expertise. In this case, the ITA determined that the harbor dues assessment was an import duty rather than a tax. The ITA provided objective criteria to support its determination. Such objective criteria are important in developing the law and providing guidance to future petitioners.[6] The Court finds that the ITA's determination that the harbor dues are an import duty is supported by substantial evidence on the record. Congress apparently did not intend rebates that are countervailable subsidies to reduce dumping margins; nevertheless, under section 1677a(d)(1)(B) an adjustment must be allowed unless a countervailing duty assessment is made under the appropriate statute and procedures.

III. *Failure to Conduct an Investigation of Below Cost Sales in the Home Market*

■ The ITA declined to conduct an investigation of below cost sales in the home market because:

Petitioners have not provided a credible basis for suspecting that substantial quantities of bicycles sold in the home market or to third countries have been made at prices which are less than the cost of production.

48 Fed.Reg. at 31,691.[7] This determination is not in accordance with the statutory requirement and places a higher burden upon the petitioner than the statute mandates. Section 773(b) of the Tariff Act of 1930 provides:

*Whenever the administering authority has reasonable grounds to believe or suspect that sales* in the home market of the country of exportation, or, as appropriate, to countries other than the United States, *have been made* at prices which represent less than the cost of producing the merchandise in question, it shall determine whether, in fact, such sales were made at less than the cost of producing the merchandise. If the administering authority determines that sales made at less than cost of production—

(1) have been made over an extended period of time and in substantial quantities, and

(2) are not at prices which permit recovery of all costs within a reasonable period of time in the normal course of trade,

such sales shall be disregarded in the determination of foreign market value.

19 U.S.C. § 1677b(b) (emphasis added). The statute requires only a showing that sales have been made at below cost, not substantial sales. It is for the agency to

---

6. In a previous determination, the ITA concluded that this same assessment was a tax rather than an import duty and applied section 1677a(d)(1)(C). *Motorcycle Batteries from Taiwan,* 47 Fed.Reg. 9,264, 9,265 (1982). That determination is not now before the Court, nor does it necessarily establish a settled law with respect to this particular assessment. The Court notes, however, the importance of consistency in ITA determinations.

7. Defendant in its brief also maintains that the petitioner's request for the investigation was un-

timely, although the agency made no such finding in its determination. Because of the Court's disposition of this issue, it does not decide whether a request for such an investigation is untimely if it is made, as here, within 62 days of the date on which the final determination is statutorily due. The Court notes, however, that in *Connors Steel Co. v. United States,* 2 CIT 242, 527 F.Supp. 350 (1981), *modified,* 3 CIT 79, 566 F.Supp. 1521 (1982), this court found that 51 days were sufficient.

investigate and determine whether substantial sales were made.

■ In reviewing the record, however, the Court concludes that even if the appropriate statutory standard is applied, plaintiffs failed to present to the ITA sufficient evidence to create reasonable grounds to believe or suspect that sales were being made at below cost in the home market. Plaintiffs alleged that certain of the manufacturers sold bicycles in the United States at a significantly higher price than in the home market. Plaintiffs further alleged that a comparison of this information with the overall operating performance of each manufacturer indicates that the manufacturers would have had to sell the bicycles in the foreign market at less than the cost of production. Essentially, plaintiffs' argument is that when financial statements reveal an operating loss, the conclusion must be that merchandise is being sold at less than the cost of production. Operating losses, however, may be caused by a variety of factors which do not relate to that year's cost of production. For example, bad management or large capital investment that is not amortized could result in the showing of a loss or very small profit. Operating losses are not necessarily tied to actual sales, and may be realized if there are no sales at all. Moreover, as the ITA noted in its determination, "financial statements often reflect accounting adjustments which can distort operating performance significantly." 47 Fed.Reg. at 31,691.

IV. *Failure to Conduct a Countervailing Duty Investigation*

■ Plaintiff contends that during the course of its antidumping investigation, the ITA uncovered evidence of the existence of countervailable subsidies. Plaintiff argues that 19 U.S.C. § 1677d (1982) requires the ITA to investigate the potential subsidies in

such a case. In its brief, however, plaintiff relies on only a portion of the statute. The statute provides in full:

> If, in the course of an investigation under this subtitle, the administering authority discovers a practice which appears to be a subsidy, *but was not included in the matters alleged in a countervailing duty petition,* then the administering authority—
>
> (1) shall include the practice in the investigation if it appears to be a subsidy with respect to the merchandise which is the subject of the investigation, or
>
> (2) shall transfer the information concerning the practice (other than confidential information) to the library maintained under section 1677f(a)(1) of this title, if the practice appears to be a subsidy with respect to any other merchandise.

19 U.S.C. § 1677d (1982) (emphasis added). Read as a whole, the statute appears to contemplate an investigation of one type of subsidy in which the agency uncovers another type of subsidy.[8] The Court therefore finds that the ITA properly rejected plaintiffs' request that it conduct a countervailing duty investigation.

### Conclusion

The final determination of the ITA regarding bicycles from Taiwan is affirmed because it is supported by substantial evidence in the record and is in accordance with law.

---

**8.** The legislative history of this provision supports this interpretation:

> Under section 775 of the Tariff Act of 1930, as added by section 101 of the bill, if, in the course of a countervailing duty investigation under Title VII of the Tariff Act ... the administering authority discovers a practice

which appears to be a subsidy but was not included in the matters alleged in the countervailing duty petition, then it must include the practice in the ongoing investigation ...

S.Rep. 249, 96th Cong., 1st Sess. 97, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 483.