AMERICAN ALLOYS, INC.,
et al., Plaintiffs,

v.

UNITED STATES, Defendant.

Court No. 91–10–00782.

United States Court of
International Trade.

Jan. 11, 1993.

Baker & Botts, William D. Kramer, Charles M. Darling, IV, and Anne Talbot, Washington, DC, for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Civil Div., Commercial Litigation Branch, U.S. Dept. of Justice, A. David Lafer, Robert E. Nielsen, Attorney–Advisor, Office of the Chief Counsel for Import Admin. U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

## OPINION AND JUDGMENT

CARMAN, Judge:

Pursuant to Rule 56.1 plaintiffs move for judgment upon the agency record. Plaintiffs challenge a portion of *Final Determination of Sales at Less Than Fair Value: Silicon Metal from Argentina*, 56 Fed. Reg. 37,891, 37,895 (Aug. 9, 1991), Pub. Doc. 157 (A.R. 2275, 2279), issued by the International Trade Administration, U.S. Department of Commerce (Commerce).

This action is brought pursuant to section 516A(a)(2)(A)(i)(II) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(A)(i)(II) (Supp.1991), and pursuant to 28 U.S.C. § 1581(c) (1988), which give this Court jurisdiction to review any negative part of a final affirmative antidumping duty determination by Commerce. The Court remands Commerce's determination for recalculation of the United States price adjustment and reserves decision on its review of this issue pending Commerce's remand results.

## BACKGROUND

United States producers of silicon metal [1] filed a petition with Commerce in August of 1990 requesting that antidumping duties be imposed upon silicon metal imports from Argentina which plaintiffs alleged were being sold at less than fair value. Commerce initiated an investigation, and as a result of that investigation made an affirmative pre-

liminary determination, and subsequently an affirmative final determination, that silicon metal from Argentina was being sold at less than fair value. *Notice of Initiation of Investigation: Silicon Metal from Argentina*, 55 Fed.Reg. 38,719 (Sept. 20, 1990); *Preliminary Determination of Sales at Less Than Fair Value: Silicon Metal From Argentina*, 56 Fed.Reg. 13,-116, 13,118 (March 29, 1991), Pub.Doc. 117 (A.R. 1819–21); *Final Determination*, 56 Fed.Reg. 37,891, 37,895 (Aug. 9, 1991), Pub. Doc. 157 (A.R. 2275, 2279).

In the course of its investigation, Commerce presented an Antidumping Request for Information (Questionnaire) and a Deficiency Questionnaire to Electrometalurgica Andina, S.A.I.C. (Andina), an Argentine producer and exporter of silicon metal to the United States. In both its Questionnaire Response and its Deficiency Response, Andina claimed that it was entitled to adjustments to United States Price (U.S.P.), that would increase U.S.P., for certain national and provincial taxes either not collected on export sales or rebated upon exportation. Questionnaire Response, Sec. B at 8–10, Pub.Doc. 59 (A.R. 1004–06); Deficiency Response at 33–37. Pub.Doc. 72 (A.R. 1191–95). These claimed adjustments included a 12.5 percent increase in U.S.P. for a rebate of national taxes received under Argentina's "Reembolso" program. Deficiency Response at 33–37, Pub.Doc. 72 (A.R. 1191–95). Under this program, exporters are eligible for a rebate of certain domestic taxes on physically incorporated inputs of a product. Questionnaire Response, Sec. C at 8, Pub. Doc. 59 (A.R. 1018); Deficiency Response at 34, Pub.Doc. 72 (A.R. 1192). An exporter is eligible to receive a rebate of 12.5 percent of the net value of the exported silicon metal. Deficiency Response, Pub. Doc. 72 (A.R. 1192).

Andina listed the internal taxes imposed on silicon metal in the home market that it claimed provided the basis for the requested 12.5 percent adjustment under the Reembolso program. Deficiency Response, Attach. 10, Pub.Doc. 72 (A.R. 1268–70).

---

**1.** Petitioner states in its brief that silicon metal is not actually a metal, but rather, the industry name for a product that is at least 96 percent pure silicon with trace impurities.

The taxes which were listed and that are now at issue are the following:[2]

1. Bank Debits
2. Value Added
3. Mining License
4. Export Promotion Fund
5. Customs Dispatch
6. Letter of Credit
7. Currency Exchange Tax
8. Municipal Tax
9. Energy Purchases
10. Tax on Tires
11. Insurance
12. Truck Engines
13. Fuels
14. Lubricants
15. Retirement Fund
16. Public Works Fund
17. Social Assistance
18. Family Subsidies
19. National Housing Fund
20. Capital
21. Assets
22. Contribucion Solidarra
23. Provincial Real Estate
24. Municipal Real Estate

Commerce preliminarily determined that silicon metal from Argentina was being sold at less than fair value. *Preliminary Determination*, 56 Fed.Reg. 13,116, 13,118 (March 29, 1991), Pub.Doc. 117 (A.R. 1819–21). Commerce increased U.S.P. for the 12.5 percent Reembolso tax rebate, thus reducing the dumping margin on Andina's U.S. export sales. *Id.* Commerce did not conduct a tax pass through analysis on the Reembolso taxes which formed the basis of this adjustment. After all adjustments were made, including adjustments not presently at issue,[3] Commerce preliminarily determined the less than fair value margin to be 2.16 percent *ad valorem. Id.*

Subsequent to Commerce's *Preliminary Determination*, petitioners reiterated their argument that the taxes did not qualify as

a basis for adjustment to U.S.P., and asked Commerce to verify that the Reembolso rebate covered taxes for which an adjustment to U.S.P. was made was proper. April 5, 1991 Verification Comments, Pub. Doc. 126 (A.R. 1841–44). In its *Final Determination*, Commerce retained the 12.5 percent adjustment to U.S.P. for the Reembolso program tax rebate and recalculated the dumping margin to be 8.65 percent *ad valorem.* 56 Fed.Reg. at 37,894–95, 37,-899, Pub.Doc. 157 (A.R. 2278–79, 2283); *Antidumping Duty Order: Silicon Metal from Argentina,* 56 Fed.Reg. 48,779 (Sept. 26, 1991).

## CONTENTIONS OF THE PARTIES

Plaintiffs argue that under the Tariff Act of 1930, 19 U.S.C. § 1677a(d)(1)(C) (1988), adjustments to U.S.P. for tax rebates are limited to indirect taxes imposed directly on the final stage product or its physically incorporated inputs. Plaintiffs contend that Commerce failed to determine that the rebated taxes claimed by Andina to provide a basis for adjustment to U.S.P. were indirect taxes directly imposed on silicon metal or inputs physically incorporated into silicon metal, and that this failure was contrary to law. Plaintiffs state further that pursuant to 19 U.S.C. § 1677e(b)(1) (1990), Commerce was required to, but failed to, verify that the rebated taxes were imposed on silicon metal or its components, the existence and incidence of the taxes, and the pass-through of the taxes in the home market price of silicon metal. 19 U.S.C. § 1677e(b)(1), provides as follows:

**§ 1677e. Verification of Information**

· · · · ·

**(b) Verification**

The administering authority shall verify all information relied upon in making—

(1) a final determination in an investigation.

Reg. 37,891, 37,895 (Aug. 9, 1991), Pub.Doc. 157 (A.R. 2275, 2279).

---

**2.** This list excludes the turnover tax and the Lote Hogar tax, which are not at issue in this case, and the import duties, the statistics tax, and the merchant marine fund tax, for which the Department made a separate adjustment as duty drawback. *Final Determination,* 56 Fed.

**3.** For example, adjustments made for taxes as duty drawbacks are not disputed by plaintiffs.

Defendant asserts that plaintiffs are seeking a countervailable subsidy inquiry in the context of an antidumping investigation. Defendant responds to plaintiffs' position by stating that neither the statutory language nor the legislative history of 19 U.S.C. § 1677a(d)(1)(C), requires Commerce to undertake a subsidy inquiry in the context of an independent antidumping investigation. Defendant suggests that plaintiffs seek relief under the countervailing duty statute if they believe that respondent is benefitting from alleged subsidies due to the over-rebate of indirect taxes paid on the exported merchandise or components "physically incorporated" therein.

Additionally, defendant contends that plaintiffs failed to raise the issue of tax pass-through in the underlying administrative proceeding and are thus precluded from raising this issue now. Regardless of whether this issue is now raised, defendant argues that the tax pass-through issue lacks merit because 19 U.S.C. § 1677a(d)(1)(C), does not legally require Commerce to measure the incidence of indirect taxes that are passed through to respondent's home market customers.

## STANDARD OF REVIEW

This Court's jurisdiction to review the final results of an antidumping duty administrative review is limited to determining whether the final results are supported by substantial evidence on the administrative record and are otherwise in accordance with the law. 28 U.S.C. § 1581(c) (1988); 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

## DISCUSSION

"The antidumping law is designed to protect domestic industries from sales of foreign merchandise at less than fair value which cause or threaten to cause material injury." *Atcor, Inc. v. United States,* 11

CIT 148, 152, 658 F.Supp. 295, 298 (1987). "To achieve this objective, the law requires the imposition of an antidumping duty in the amount by which foreign market value (FMV) exceeds USP." *Id.* To prevent dumping margins from arising due to the fact that the country of exportation assesses certain taxes on home market sales but not on export sales, the antidumping law provides for an offsetting adjustment in the calculation of United States price. The applicable statute, 19 U.S.C. § 1677a(d)(1)(C) (1988), provides:

**(d) Adjustments to purchase price and exporter's sales price.**—The purchase price and the exporter's sales price shall be adjusted by being—

(1) increased by—

. . . . .

(C) the amount of any taxes imposed in the country of exportation directly upon the exported merchandise or components thereof, which have been rebated, or which have not been collected, by reason of the exportation of the merchandise to the United States, but only to the extent that such taxes are added to or included in the price of such or similar merchandise when sold in the country of exportation.

Commerce argues that the taxes in issue qualified for an upward adjustment to U.S.P. pursuant to 19 U.S.C. § 1677a(d)(1)(C). According to Commerce, validation under this statute requires the Department to determine "that the rebate program was established by a foreign government to rebate indirect taxes upon exportation, that these taxes are included in the home market sales price of the subject merchandise, and that the rebate is, in fact, paid upon exportation of the subject merchandise." Defendant's Supplemental Memorandum at 4. Based upon this reading of the statute, defendant's verification of information regarding rebates under Argentina's Reembolso program consisted of an examination of the following: the text of Decree 1555 establishing this rebate program, an explanation of its intended purpose, the applicable rebate rates that Andina provided in its Deficiency Response and

an export shipping license for U.S. sale number 20017 which states the terms for the application of this rebate. *Id.*

■ It has been argued in past cases that Commerce should have employed different methods of verification. This Court has responded to one such argument with the following: "The decision to select a particular methodology rests solely within Commerce's sound discretion. As long as there is 'substantial evidence on the record' to support the choice, the Court will sustain the methodology chosen by Commerce." *Hercules, Inc. v. United States,* 11 CIT 710, 726, 673 F.Supp. 454, 469 (1987). Although this Court will not dictate the method of verification that Commerce must use, it will insist that Commerce's verification adhere to statutory requirements.

*Physical Incorporation Standard*

■ The first issue before the Court is whether Commerce's determination to make an upward adjustment to U.S.P. for indirect taxes "imposed ... directly upon the exported merchandise or components thereof, which have been rebated ... by reason of the exportation" is supported by substantial evidence in the record and is otherwise in accordance with law. Plaintiffs argue that only rebated taxes which are imposed directly on the exported merchandise or on inputs physically incorporated into the merchandise may serve as the basis for an adjustment under 19 U.S.C. § 1677a(d)(1)(C). Defendant contends that analyzing the adjustment based upon the "physical incorporation standard" would amount to undertaking a countervailing duty investigation in the context of an independent antidumping investigation.

This issue was addressed by the Court in *Huffy Corp. v. United States,* 10 CIT 214, 632 F.Supp. 50 (1986). In that case the Court was presented with the question of whether the International Trade Administration, in the course of an independent antidumping investigation, should allow an upward adjustment to U.S.P. for a rebate that allegedly constituted a subsidy. Plaintiffs in *Huffy* stated that "Congress intended the antidumping and countervailing duty statutes to work together," and cited 19 U.S.C. § 1677a(d)(1)(D), as an example of the antidumping statute providing an adjustment to U.S.P. in the form of an addition for countervailing duties imposed. *Id.* at 219, 632 F.Supp. at 55. The *Huffy* plaintiffs argued further that "[i]t would defeat the purpose of the countervailing duty law ... if we allow an addition to the United States price for a rebate program that constitutes a countervailable subsidy." *Id.* Although *Huffy* involved an import duty rebated by reason of exportation rather than an indirect tax rebated by reason of exportation, *Huffy* provides the following useful analysis:

> Moreover, there are further reasons the court and the ITA should refrain from making a subsidy determination in the context of a dumping investigation. The determination of whether a countervailing subsidy exists is a complex one and Congress has provided a separate set of guidelines for the inquiry. In a dumping investigation the ITA is not seeking the same information or asking the same questions it would in a countervailing duty investigation. For this Court to disallow an adjustment to third country price because the import duty rebate is allegedly a countervailable subsidy would be to bypass the countervailable duty statute and essentially penalize the Taiwanese exporters without allowing them an opportunity at the agency level to have a full hearing on whether the rebates are a subsidy.

*Id.* at 220, 632 F.Supp. at 55–56 (footnote omitted).

In Plaintiffs' Response to Questions from the Court (Plaintiffs' Response), plaintiffs provide a list of four cases in which the countervailing duty standard has been applied in antidumping determinations. Plaintiffs' Response at 11. However, in none of these examples was the countervailing duty standard applied in the context of an independent antidumping investigation. In *Atcor, Inc. v. United States,* the Court stated that if the facts from the countervailing duty and antidumping investigations were similar enough, then the pri-

or countervailing duty investigation could be relied upon. 11 CIT 148, 159, 658 F.Supp. 295, 303–04 (1987). In *Final Determination of Sales at Less Than Fair Value: Light–Walled Welded Rectangular Carbon Steel Tubing from Argentina,* 54 Fed.Reg. 13,913, 13,915 (April 6, 1989), the countervailing duty standard was not independently applied. Instead, the amount of allowable indirect taxes found to have been paid by a concurrent countervailing duty investigation of the subject merchandise was applied. There was a companion countervailing duty investigation covering the barbed wire in *Carbon Steel Wire Rod From Argentina: Final Determination of Sales at Less Than Fair Value,* 49 Fed.Reg. 38,170 (Sept. 27, 1984). Although there was no companion countervailing duty investigation in the fourth case listed by plaintiffs, the results from a related countervailing duty investigation were used. *Barbed Wire and Barbless Fencing Wire from Argentina: Final Determination of Sales at Less Than Fair Value,* 50 Fed.Reg. 38,563 (Sept. 23, 1986). Thus, this last case did not involve a situation where a countervailing duty investigation was ordered to be undertaken in the context of an independent antidumping investigation. Rather, results were at hand that could be borrowed and applied to the case.

In this case there is no companion countervailing duty investigation nor is there a related case from which results could be borrowed (nor should be borrowed). Commerce is not required to undertake a countervailing duty inquiry in the context of an independent antidumping investigation. Thus, Commerce properly determined that it need not conduct a "physical incorporation" subsidy inquiry before making an upward adjustment to U.S.P. for indirect taxes rebated pursuant to Argentina's Reembolso program. This holding does not leave plaintiffs without recourse; they are free to petition for relief under the countervailing duty statute.

*Measurement of Tax Incidence*

The second issue before the Court is whether Commerce was required to mea-sure the tax incidence in Argentina. Commerce objects to the Court's consideration of the tax pass through question since it claims that plaintiffs failed to exhaust their administrative remedies with respect to this issue. Defendant argues that plaintiffs did not specifically raise the pass through issue before Commerce and are thus precluded from raising the issue now. The Court disagrees with Commerce's position and holds that plaintiffs may raise the issue of whether Commerce is required to analyze whether those qualifying taxes have been passed through to customers in the home market.

The record shows, nevertheless, that plaintiffs did in fact argue that Andina's incidence of tax should be measured.

> The Department should require Andina (1) to explain the basis on which it claims that an adjustment for noncollection or rebate of each of these taxes is allowable and (2) in those instances (if any) in which an adjustment conceivably might be allowable, to provide a full explanation of how the tax is calculated, assessed, and paid; translations of relevant laws; and *a full explanation (including worksheets) of how it calculated the incidence of the tax* and amount of the adjustment claimed with respect to the tax.

Petitioners' January 24, 1991, Comments at 15, Pub.Doc. 80 (A.R. 1355) (emphasis added).

Even if there were not evidence in the record showing that the issue was raised below, plaintiffs' futility argument would be well taken. Commerce itself argues in its brief that it does not agree with this Court's interpretation of 19 U.S.C. § 1677a(d)(1)(C), in *Zenith Elecs. Corp. v. United States,* 10 CIT 268, 633 F.Supp. 1382 (1986), *appeal dismissed,* 875 F.2d 291 (Fed.Cir.1989) (*Zenith I* ). Defendant lists ten determinations it made prior to plaintiffs' hearing in which Commerce stated its "well-established position" that the statute does not require any tax pass through measurement. Defendant's Brief at 32–33. The Court agrees with plaintiffs'

position that further arguing the pass through issue would have been a futile act in light of defendant's prior determinations. The Court now turns to the tax pass through question.

■ The tax pass through question has been addressed by this Court in the *Zenith* line of cases. *Zenith I*, 10 CIT at 268, 633 F.Supp. at 1382; *Zenith Elecs. Corp. v. United States*, 14 CIT 831, 755 F.Supp. 397 (1990) (*Zenith II*); *Zenith Elecs. Corp. v. United States*, 15 CIT ——, ——, 770 F.Supp. 648, 650–51 (1991) (*Zenith III*).

In *Zenith [I]*, 10 CIT 268, 633 F. Supp. 1382 (1986), *appeal dismissed*, 875 F.2d 291 (Fed. Cir. 1989) this Court held that § 772(d)(1)(C) of the Tariff Act of 1930 as amended, 19 U.S.C. § 1677a(d)(1)(C), requires commerce to account for forgiven tax on exported merchandise by making an upward adjustment to United States Price ("USP") in the amount actually forgiven on the exports. This Court has ruled that the statutory language requires Commerce to calculate the adjustment for forgiven taxes as an addition to USP in the amount of tax forgiven on exports, and to measure the extent to which tax was actually passed through to home market purchasers so that only the forgiveness of that amount of tax can enter into the calculations.

*Zenith III*, 15 CIT at ——, 770 F.Supp. at 650–51.

As in *Zenith II*, Commerce argues that its interpretation is consistent with the General Agreement on Tariffs and Trade and that "plaintiffs' interpretation of the tax clause would impose upon Commerce a task far more complex and burdensome than anything envisioned by Congress." Defendant's Brief at 69. This Court agrees with *Zenith II*'s response to these arguments:

> [W]e cannot excuse Commerce from adhering to statutory directives because doing so would "be an enormous and extremely complex task." The Court need not explain why that is no excuse for disregarding the law. Furthermore, correct interpretation of the statute is not contrary to GATT.

*Zenith II*, 14 CIT at 840, 755 F.Supp. at 408.

The Court addressed the tax pass through requirement of § 1677a(d)(1)(C) prior to the *Zenith* line in *Huffy Corp. v. United States*, 10 CIT 214, 632 F.Supp. 50 (1986). After stating that statutes should be interpreted so that no part is rendered meaningless, the Court noted the following:

> Congress included a special requirement in section 1677a(d)(1)(C) that it did not put in section 1677a(d)(1)(B). We must conclude that Congress recognized that not all taxes are passed on to the home market, and therefore required some showing that such a tax is passed on before its rebate could be the source of an adjustment. To support an adjustment for a tax rebate there must be substantial evidence in the record to support the conclusion that the tax was passed on to the home market.

*Huffy*, 10 CIT at 221, 632 F.Supp. at 56.

Commerce contends that its interpretation of the tax clause is consistent with the legislative history of the provision. This Court, however, finds that the legislative history of the statute supports the argument that Congress intended the administering agency to measure tax absorption. For example, while explaining the definitions of "purchase price" and "exporter's sales price," two terms used in 19 U.S.C. § 1677a(d)(1)(C), the Senate Committee gave examples of when an adjustment would and would not be permitted.

> Moreover, an adjustment for a tax rebate will be permitted only to the extent such taxes are added to or included in the price of the merchandise when sold in the home market. *To the extent the exporter absorbs indirect taxes in sales in the home market,* no adjustment will be made to purchase price.

Hearings Before the Senate Committee on Finance, H.R. 10,710, 93d Cong., 2d Sess. 310 (1974) (emphasis added). The italicized portion of this statement illustrates the fact that the committee recognized that not all taxes are included in the purchase price of the merchandise. A company may absorb some of the tax, rather than pass it

entirely on to the purchaser. Thus, some method of measurement is needed to determine how much of the tax is actually "added to or included in the price of such or similar merchandise when sold in the country of exportation" as 19 U.S.C. § 1677a(d)(1)(C), requires.

Similarly the House report on the amendment creating the adjustment supports this conclusion:

> [A]n adjustment for such [indirect] tax rebates would be permitted only to the extent that such taxes are added to or included in the price of such or similar merchandise when sold in the country of exportation. This is to insure that the rebate of such taxes confers no special benefit upon the exporter of the merchandise that he does not enjoy in sales in his home market. *To the extent that the exporter absorbs indirect taxes in his home market sales, no adjustment to purchase price will be made* and the likelihood or size of dumping margins will be increased.

H.R.Rep. No. 571, 93d Cong., 1st Sess. 69 (1973) (emphasis added). Once again the legislative history indicates a recognition that taxes are not automatically passed on by the exporter in home market sales. Therefore, to comply with the language of 19 U.S.C. § 1677a(d)(1)(C), that U.S.P. only be raised "to the extent that such taxes are added to or included in the price of such or similar merchandise when sold in the country of exportation," a tax pass through analysis must be undertaken.

## CONCLUSION

Plaintiffs' Motion for Judgment Upon the Agency Record is denied in part and remanded in part. The Department of Commerce's *Final Determination of Sales at Less Than Fair Value: Silicon Metal from Argentina,* is reversed with respect to Commerce's failure to determine the pass through tax incidence for the Reembolso tax under 19 U.S.C. § 1677a(d)(1)(C). This action is remanded to Commerce for recalculation of the United States Price adjustment, and Commerce is directed to measure the tax incidence of qualifying taxes under the Reembolso program in a manner

consistent with the Court's opinion. Commerce shall report the results of its remand determination to the Court within 60 days of the date hereof. Plaintiffs may respond within 15 days from the filing of the remand determination with the Court. Plaintiffs' Motion for Judgment Upon the Agency Record is denied in all other respects.

## ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED that plaintiffs' Motion for Judgment Upon the Agency Record is denied in part and remanded in part; and it is further

ORDERED that the Department of Commerce's *Final Determination of Sales at Less Than Fair Value: Silicon Metal from Argentina,* is reversed with respect to Commerce's failure to determine the pass through tax incidence for the Reembolso tax under 19 U.S.C. § 1677a(d)(1)(C); and it is further

ORDERED that this action is hereby remanded to Commerce for recalculation of the United States Price adjustment and that Commerce is directed to measure the tax incidence of qualifying taxes under the Reembolso program in a manner consistent with the Court's opinion; and it is further

ORDERED that the Department of Commerce shall report the results of its remand determination to the Court within 60 days of the date of this Order; and it is further

ORDERED that plaintiffs may respond within 15 days from the filing of the remand determination with the Court; and it is further

ORDERED that plaintiffs' Motion for Judgment Upon the Agency Record is denied in all other respects.