CARLISLE TIRE & RUBBER CO.,
DIVISION OF CARLISLE CORP.
et al., Plaintiffs,

v.

The UNITED STATES, Defendant,

Dong-Ah Tire Ind. Co., Ltd.,
Defendant-Intervenor,

Heung-Ah Tire Ind. Co., Ltd.,
Defendant-Intervenor.

Court No. 84–07–01058.

United States Court of
International Trade.

March 16, 1987.

Frederick L. Ikenson, P.C. (Frederick L. Ikenson and J. Eric Nissley), Washington, D.C., for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Dept. of Justice, Commercial Litigation Branch (Sheila N. Ziff), Washington, D.C., for defendant.

Dow, Lohnes & Albertson (William Silverman, John C. Jost, and Margaret B. Dardess), Washington, D.C., for defendant-intervenor Dong-Ah Tire Ind. Co., Ltd.

Arnold & Porter (Richard A. Johnson and Stephan E. Becker), Washington, D.C., for

defendant-intervenor Heung-Ah Tire Ind. Co., Ltd.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

Plaintiffs, representing domestic producers of tire tubes, brought this action challenging the final negative dumping determination in *Tubes For Tires, Other Than Bicycle Tires, From the Republic of Korea*, 49 Fed.Reg. 26,780 (1984). The action was remanded to the Department of Commerce, International Trade Administration (Commerce) for recalculations in view of the Court's finding that merchandise adjustments under 19 U.S.C. § 1677b(a)(4) (1982) and drawback adjustments under 19 U.S.C. § 1677a(d)(1)(B) (1982) were made on the basis of inconsistent sets of tire tube weights. *Carlisle Tire & Rubber Co. v. United States*, 10 CIT ——, 634 F.Supp. 419 (1986). Specifically, the weights used for the merchandise adjustments were determined by randomly weighing sample tubes, while the generally higher weights used to determine drawback adjustments were reportedly taken from Korean packing lists which accompanied shipments of exported tubes. The remand order directed that Commerce either disregard the drawback adjustment entirely, or make both adjustments using a consistent set of weights. The Court previously held that merchandise weights verified by weighing sample tubes were supported by substantial evidence and in accordance with law. *See Carlisle Tire & Rubber Co. v. United States*, 9 CIT ——, ——, 622 F.Supp. 1071, 1082 (1985).

On remand Commerce chose to retain the drawback adjustments and to use the verified merchandise weights to make both adjustments. Commerce found that the drawback adjustment for Dong-Ah Tire Ind. Co., Ltd. (Dong-Ah) had been calculated using the weights specified on packing lists attached to Dong-Ah's drawback applications. Commerce therefore performed recalculations and reported a slight increase in the dumping margin for Dong-Ah. For Heung-Ah Tire Ind. Co., Ltd. (Heung-

Ah), Commerce found that the drawback adjustment had originally been based on the merchandise adjustment weights, and that no recalculations were necessary. *Determination of the Tube Weights Used to Calculate Duty Drawback Pursuant to Court Remand* (April 29, 1986) (*Remand Determination*) at 2.

After reviewing Commerce's recalculations for Dong-Ah, the Court found that Commerce had not complied with the remand instructions. The statute authorizes a drawback adjustment in "the amount of any import duties imposed by the country of exportation which have been rebated, ... by reason of the exportation of the merchandise to the United States." 19 U.S.C. § 1677a(d)(1)(B) (1982). The statute does not authorize an adjustment in whatever amount is refunded by the exporting country. However, once Commerce determined the total weight of Dong-Ah's tubes exported to the United States during the investigation period and the total amount of drawback received by Dong-Ah during that time, it calculated actual drawback per kilogram, and allocated total drawback to individual United States sales based on the merchandise adjustment weights. *Remand Determination* at 15–17. By focusing only on the amount of duties refunded, Commerce made adjustments for drawback in the full amount of drawback received even though refunds by the Korean government were based on the generally higher packing list weights. Had Commerce first verified the amount of duties paid by Dong-Ah on imported raw materials used in the exported tire tubes, as required by the statute, the generally lower merchandise weights should have resulted in a lower total amount of drawback for which adjustments could be made under section 1677a(d)(1)(B) (statutory drawback).

The Court therefore directed that if Commerce were to use the merchandise weights, it should determine duties per kilogram paid by Dong-Ah and make adjustments in that amount if sufficient refunds were made, using total drawback per kilogram as a ceiling. Commerce was instructed that the adjustment for drawback could

not exceed the lesser of the amount of duties paid or the amount of duty rebates received by Dong-Ah.

On January 12, 1987, Commerce reported the results of the recalculation for Dong-Ah:

[T]he Department examined Dong-Ah's antidumping duty questionnaire response and determined the amount of duty and import taxes paid on raw materials imported to Korea, including the rubber. Then the amount of duty and import taxes Dong-Ah paid on a per kilogram basis was determined for each of the imported raw materials, including rubber, used by the company to make the tubes under investigation.

The Korean government's estimates for determining duty drawback of the quantities of the various materials used to manufacture a one-kilogram tube were used to calculate the import duty cost for one kilogram of raw material. This was done by multiplying the standard quantity of each imported material as determined by the Korean government by the duty paid per kilogram of the material. Adding these figures together, a total duty cost per kilogram of a manufactured tube was calculated. The cost per kilogram of tube was then multiplied by the actual weight of each tube model, as verified by the Department and used in the merchandise adjustments, to arrive at the total duty cost for each tube model and the drawback amount for the imported raw materials.

The Department then determined the drawback amount for the valves by determining from the record the import duties paid for certain valves. For those valves, it has assigned no drawback amount. The drawback amounts for the imported raw materials and the valve were added together for each specific tube to determine the duty drawback adjustment. This calculation has resulted in a weighted average less-than-fair-value margin of 0.017 percent.

The Court was unable to determine from Commerce's report whether the total duties paid by Dong-Ah on raw materials used to manufacture the exported tubes exceeded the amount of duty rebates received by Dong-Ah. Defendant clarified that total duties paid did not exceed refunds received, and thus Commerce did not cap total statutory drawback at the amount of the refunds.

## I. Discussion

Plaintiff argues that weights found on the companies' packing lists are the link between duties paid and drawback received, and unless Commerce uses those weights to make both drawback adjustments and merchandise adjustments, Commerce may not allow adjustments for drawback in this investigation. Plaintiffs contend that Commerce's determination is further flawed by the fact that Commerce did not know the total amount of drawback received by Heung-Ah, and relied on total duties paid as a measure of drawback received under 19 U.S.C. § 1677e(b) (1982). The Court disagrees.

■ Commerce is not required to use the packing list weights to determine drawback adjustments as argued by plaintiffs. Commerce is only required to use a method which is verifiable and is not based on data inconsistent with data used in determining other weight-based adjustments.

■ Congress provided for a drawback adjustment when a foreign producer receives a refund of duties it paid on imported materials because of the exportation of the merchandise under investigation. *See* 19 U.S.C. § 1677a(d)(1)(B). In determining whether such an adjustment should be made, Commerce considers (1) whether the import duty and rebate are directly linked to, and dependent upon, one another; and (2) whether the company claiming the adjustment can show that there were sufficient imports of the imported raw materials to account for the drawback received on the exported product. *Remand Determination* at 5–6; *see Certain Tapered Journal Roller Bearings and Parts Thereof From Italy,* 49 Fed.Reg. 2278, 2280 (1984).

Commerce determined that both Dong-Ah and Heung-Ah were entitled to receive adjustments for drawback under these cri-

teria. Its determination was based on a review and verification of drawback applications, quantities of dutiable imported raw materials based on import and export permits, company bank records and data obtained from the Korean Central Bank. *See* R.Docs. 42B, 132, 136. Since there is sufficient evidence underlying Commerce's determination that both companies qualified for adjustments under 19 U.S.C. § 1677a(d)(1)(B), that determination is supported by substantial evidence and in accordance with law.

With respect to Commerce's method of determining the precise amount of statutory drawback for Heung-Ah, 19 U.S.C. § 1677e(b) states in part that:

In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, ... use the best information otherwise available.

In this case, Commerce sought to obtain information relevant to the amounts of drawback received by Heung-Ah, but the total amount could not be adduced under the recordkeeping practices maintained by Heung-Ah during the period of the investigation. Transcript of telephone conference of November 25, 1986, at 25–26. Commerce's use of total duties paid as a measure of total drawback rebated was grounded on Korean law, which permits drawback in the full amount of duties paid.

■ The Court holds that under these circumstances there is a sufficient basis to conclude that Heung-Ah was "unable to produce information" regarding total drawback within the meaning of the best information rule, 19 U.S.C. § 1677e(b). The Court further holds that Commerce's measurement of Heung-Ah's adjustment under 19 U.S.C. § 1677a(d)(1)(B) was reasonable in view of Korean law and this Court's holding that an adjustment for drawback may not exceed the amount of duties paid on raw materials contained in the merchandise exported to the United States.

■ Plaintiffs also argue that by allocating a total drawback pool over individual sales rather than relying on the packing list data, an overadjustment occurs when drawback allocated to a particular sale exceeds the drawback that would be allocated using the packing list data. "Thus each time Commerce's reallocation of drawback yields an adjustment amount for a particular sale that exceeds the amount of drawback actually received by reason of that transaction, Commerce unlawfully overadjusts, arbitrarily inflates United States price, and makes an unfair comparison with home market sales of the same size at prices which presumably include a lesser amount of unrefunded import duties." Letter of counsel for plaintiffs, dated February 16, 1987, at 1–2.

The Court finds nothing in the statute which prohibits Commerce from allocating total statutory drawback to arrive at a uniform drawback allotment for tube models which is then used to make adjustments in individual sales. Even if Commerce disregarded the verified merchandise weights and used the packing list weights to determine both adjustments, allocations would have to be made to convert packing list information from a shipment basis. The Court has previously affirmed Commerce's discretion in making adjustments based on allocations of aggregate data. *See Brothers Industries, Ltd. v. United States*, 3 CIT 125, 540 F.Supp. 1341, 1363–64 (1982).

Plaintiffs' suggestion that Commerce reintroduce data from the packing lists and cap drawback for each United States sale at the amount which would apply to each sale using the packing list data would result in Commerce's use of inconsistent weight data, the same irregularity which precipitated the remand. By allocating the total duties paid that were refunded by Korea over individual sales using the merchandise weights, Commerce has applied drawback consistently to tires of uniform weight.

Since Commerce has properly chosen to allocate aggregate drawback over individual transactions and to use a consistent set of weights for its weight-based adjust-

ments, the remand results showing less than fair value margins of 0.017% for Dong-Ah and 0.03% for Heung-Ah is supported by substantial evidence and in accordance with law. Since the margins are concededly *de minimis,* Commerce's negative less than fair value determination is sustained.

## II. Conclusion

The purpose of the remand was to eliminate the possibility that Commerce's final negative determination was caused by Commerce's use of conflicting weights in the course of making different adjustments. It is now clear that it did not.

The action is dismissed. Judgment will be entered accordingly. So ordered.