Slip Op. 99-97

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |  |
|---|---|---|
| RAJINDER PIPES LTD., | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | **Court No. 98-07-02504** |
| | : | **BEFORE: CARMAN, CHIEF JUDGE** |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| ALLIED TUBE & CONDUIT CORP., | : | |
| SAWHILL TUBULAR DIVISION OF | : | |
| ARMCO, and WHEATLAND TUBE | : | |
| CO., | : | |
| | : | |
| Defendant-Intervenors. | : | |

_____:

Plaintiff, Rajinder Pipes Ltd., moves for judgment on the agency record pursuant to U.S. CIT Rule 56.2, challenging the United States Department of Commerce's (Commerce) denial in the final results of an antidumping duty administrative review of plaintiff's claim for an upward adjustment to its export price for import duties not collected on raw materials under an Indian duty drawback program. In denying the adjustment, Commerce determined plaintiff failed to satisfy Commerce's two-prong test required for the grant of a duty drawback adjustment. Defendant, United States, and Defendant-Intervenors, Allied Tube & Conduit Corporation, Sawhill Tubular Division of Armco, and Wheatland Tube Company, oppose the motion.

*Held*: This Court denies plaintiff's motion and sustains the final determination made by Commerce in *Certain Welded Carbon Steel Pipes and Tubes from India,* 63 Fed. Reg. 32825 (Dep't Commerce 1998) (final admin. review), as amended in *Certain Welded Carbon Steel Pipes and Tubes From India,* 63 Fed. Reg. 39269 (Dep't Commerce 1998) (amended final admin. review), as amended again in *Certain Welded Carbon Steel Pipes and Tubes From India,* 63 Fed. Reg. 66120 (Dep't Commerce 1998) (amended final admin. review), as the Court finds Commerce's determination is supported by substantial evidence on the record and is otherwise in accordance with law.

Date: September 17, 1999

*Cameron & Hornbostel LLP* (*Dennis James, Jr.*), Washington, D.C., for plaintiff.

*David W. Ogden*, Acting Assistant Attorney General of the United States; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Reginald T. Blades, Jr.*); *Christine Savage*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Counsel, for defendant.

*Schagrin Associates* (*Roger B. Schagrin*), Washington, D.C., for defendant-intervenors.

**OPINION**

**CARMAN, CHIEF JUDGE**:  Pursuant to U.S. CIT Rule 56.2, plaintiff, Rajinder Pipes Ltd. (Rajinder), moves for judgment on the agency record arguing that the United States Department of Commerce's (Commerce) final determination in *Certain Welded Carbon Steel Pipes and Tubes From India*, 63 Fed. Reg. 32825 (Dep't Commerce 1998) (final admin. review) (*Final Results*), as amended by *Certain Welded Carbon Steel Pipes and Tubes From India,* 63 Fed. Reg. 39269 (Dep't Commerce 1998) (amended final admin. review) (*Amended Results I*), as amended again by *Certain Welded Carbon Steel Pipes and Tubes From India*, 63 Fed. Reg. 66120 (Dep't Commerce 1998) (amended final admin. review) (*Amended Results II*), is not supported by substantial evidence on the record, is unreasonable, and is otherwise not in accordance with law.

Plaintiff does not dispute the corrections of clerical errors effectuated by *Amended Results I* and *Amended Results II*.  Rather, plaintiff argues Commerce's determination in *Final Results* was unjustified and unreasonable in finding that Rajinder was unable to provide record evidence required for establishing the first prong of the two-prong test necessary for the grant of a duty drawback adjustment.[1]  Rajinder also argues that Commerce was wrong in failing to apply the

_____

[1] The two-prong test Commerce considers when deciding whether to grant a duty drawback adjustment is:

second prong of the test. Finally, Rajinder contends that Commerce improperly rejected the information submitted by Rajinder in January 1998 to satisfy the two-prong test.

Plaintiff requests that this Court find that Commerce's denial of an upward adjustment to Rajinder's export price for duties not collected was not supported by substantial evidence on the record, was unreasonable, and was otherwise not in accordance with law. Rajinder also requests this Court remand the matter to Commerce with instructions that the duty drawback adjustment be granted.

Defendant and defendant-intervenors, Allied Tube & Conduit Corporation, Sawhill Tubular Division of Armco, and Wheatland Tube Company (Allied), oppose plaintiff's motion, contending Commerce's determination should be sustained. Defendant and Allied argue that denial of drawback adjustment was proper due to Rajinder's failure to satisfy Commerce's test for eligibility. Also, defendant and Allied maintain that Commerce properly rejected Rajinder's submissions in January 1998 as untimely.

This Court has jurisdiction under 28 U.S.C. § 1581(c) (1994), and for reasons set forth

---

(1) whether the import duty and rebate are directly linked to, and dependent upon, one another; and (2) whether the company claiming the adjustment can show that there were sufficient imports of the imported raw materials to account for the drawback received on the exported product.

*E.I. DuPont de Nemours & Co. v. United States*, 17 CIT 1266, 1271, 841 F. Supp. 1237, 1242 (1993) (quoting *Carlisle Tire & Rubber Co. v. United States*, 11 CIT 168, 171, 657 F. Supp. 1287, 1289 (1987)).

below, denies plaintiff's Motion for Judgment Upon An Agency Record and sustains

Commerce's determination in the *Final Results,* as amended by *Amended Results I* and *Amended*

*Results II*.

BACKGROUND

On June 19, 1997, Commerce initiated a review of carbon steel pipes and tubes from

India. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 62 Fed.

Reg. 33394 (Dep't Commerce 1997).  Rajinder claimed on Commerce's initial questionnaire that

it was eligible for an upward adjustment to its export price for import duties not collected on

account of its steel and zinc imports to India.  Rajinder's claim was based upon 19 U.S.C.

§ 1677a(c)(1)(B) (1994) which directs Commerce to increase the price used to establish the

export price and constructed export price by "the amount of any import duties imposed by the

country of exportation which have been rebated, or which have not been collected, by reason of

the exportation of the subject merchandise to the United States."

Commerce sent Rajinder a supplemental questionnaire in which it stated it was unclear

how Rajinder had determined the duty drawback amounts and requested a step-by-step

description of Rajinder's calculations.  Commerce requested Rajinder:

> explain and provide supporting evidence (a) demonstrating how the payment of import
> duties and the receipt of duty drawback are directly linked to and dependent upon one
> another, and (b) demonstrating that there were sufficient raw materials to account for the
> duty drawback you received on the final exported products.  In addition, please provide a
> copy of the Advance License to which you subscribed.

(Rajinder Supplemental Questionnaire, Plaintiff Rajinder Pipes Ltd.'s Appendix to Memorandum

of Points and Authorities (PA) at 14.)  Rajinder responded by providing a narrative explanation of

the method it used to calculate the duty drawback adjustment amount and providing a copy of

Rajinder's Advance Licences.[2]

The Advance License documents submitted by Rajinder authorize it to import a specific

amount of hot rolled carbon steel and zinc duty free, provided a conforming amount of galvanized

steel pipes and tubes are exported within twelve months of the date of issue of the advance

license.  Furthermore, the license requires the material imported "be useable for the types of pipes

and tubes exported."  (Plaintiff's Motion for Judgment on the Agency Record Pursuant to Rule

56.2 (RAJ) at 18.)  If Rajinder fails to fulfill its export obligation, it must pay Indian Customs the

import duty not collected by reason of the license which is proportionate to the quantity of pipes

and tubes not exported under the license.  In order to prove that it has met its obligations under

the license, Rajinder must submit quarterly reports to Indian Customs that detail the goods

imported, manufactured, and exported under the license.

On December 3, 1997, Commerce informed Rajinder it intended to verify Rajinder's

factual submissions and forwarded a Verification Outline asking Rajinder to:

---

[2] Under the Indian Advance License program, exporters of certain goods can apply for a
license allowing them to import into India, duty free, raw materials used in the production of the
exported goods.  The exemption for the imported duties is based on the amount of the imported
products used in the production of the exported products.  The "right to import duty free accrues
to the company as soon as it exports and receives the license," (Rajinder Supplemental
Questionnaire Response, Plaintiff Rajinder Pipes Ltd.'s Appendix to Memorandum of Points and
Authorities (PA) at 17), and "the importation may take place after exportation of goods,"
(Rajinder Questionnaire Response, PA at 11), so long as the importation occurs within the time-
frame specified by the license.

[P]rovide source documents demonstrating that the import duty and rebate are directly linked to, and dependent upon, on [sic] another and demonstrating that there were sufficient imported raw materials to account for the drawback received on the exported product.

(Verification Outline, PA at 43-44.)  During verification, Commerce reviewed Rajinder's duty drawback calculations and verified the numbers finding no discrepancies.  Commerce noted the numbers were subject to change as Indian Customs had not physically verified the quantity of steel coil.  Commerce also learned Rajinder did not import any zinc during the period of review but expected a shipment of zinc after verification.  Rajinder told Commerce that it would submit additional documentation for duty free imports of steel coil and zinc sometime prior to publication of the results of Commerce's preliminary review.  In response, Commerce officials stated that the deadline for submitting new information for the record of the administrative review had passed, but Rajinder "should do what they feel is in their best interest and that the Department would make a decision accordingly."  (Verification Report, PA at 46.)

On January 14, 1998, Rajinder submitted copies of the import pages from its Duty Exemption Entitlement Certificate (DEEC) book.[3]   Rajinder claimed the pages demonstrated

---

[3] Indian Advance Licenses come with a Duty Exemption Entitlement Certificate (DEEC) book.  The DEEC book is divided into two parts, one for imports and one for exports.  The export pages of the DEEC book, copies of which were submitted by Rajinder in its response to Commerce's supplemental questionnaire, describe goods manufactured and exported pursuant to the license and are signed by Indian Customs.  The book's import pages, which were *not* initially submitted by Rajinder in its response to Commerce's supplemental questionnaire, describe goods imported into India duty free pursuant to the licenses and also are signed by Indian Customs.

The DEEC book import pages were apparently not available at verification because they were in the possession of Indian Customs who was physically verifying the quantity of steel coil imported duty free by Rajinder under the Advance License program.  Additional copies of the same papers were sent to Commerce on January 20, 1998.

Rajinder imported zinc and steel coil.  On January 26, 1998, Rajinder submitted additional documents related to the import of zinc.

In response to Rajinder's submissions, Commerce sent letters dated January 14 and 15, 1998 to Rajinder stating that, at verification, Commerce had expressly indicated that the deadline for the submission of new materials passed on December 16, 1997.  Because Rajinder submitted new information after that date, Commerce rejected the information as untimely.

On February 9, 1998, Commerce issued the preliminary results of its administrative review, *see Certain Welded Carbon Steel Standard Pipes and Tubes From India,* 63 Fed. Reg. 6531 (Dep't Commerce 1998) (preliminary admin. review), denying Rajinder's duty drawback adjustment.   Commerce explained in its Preliminary Results Memorandum that it denied Rajinder's claim because Rajinder failed to satisfy Commerce's two-prong test.  Regarding the first prong, Rajinder failed to provide "record evidence" of the link between rebate and import duty.  (Preliminary Results Memorandum (Memorandum), PA at 63 (emphasis omitted).)  Regarding the second prong, Rajinder's attempt to supplement the record with January 1998 submissions was rejected as untimely.  In June 1998, Commerce released the final results of its administrative review, denying Rajinder's arguments and stating Rajinder failed the test for duty drawback adjustments because it "did not establish a direct link between the import duty and the drawback Rajinder claimed it received." *Final Results*, 63 Fed. Reg. at 32829.  On July 16, 1998, Rajinder timely filed this action.

CONTENTIONS OF THE PARTIES

A.      *Plaintiff*

Plaintiff, Rajinder, claims the first prong of Commerce's two-prong test is misapplied where, as here, non-collection of duties is the method for duty drawback.  This is true, plaintiff argues, because non-collected duties "must *per force* be 'directly related' to the duties that were not, but otherwise would have been, paid since they are one and the same."  (RAJ at 15 (emphasis in original).)  To satisfy this prong, Rajinder argues, all it need show is that it was a participant in a duty drawback scheme, it imported and exported merchandise, and no duty was collected.  Rajinder claims it satisfied this prong by providing general information regarding how duty drawbacks work in India, supplying copies of its Advance Licenses, submitting export pages from its DEEC book, and supplying bills of entry for the raw material into India.  When the above documents are viewed together, the first prong of Commerce's test is satisfied, and Rajinder argues it was unreasonable for Commerce to rule otherwise.

Additionally, Rajinder contends, Commerce reinterpreted the proof requirements for prong one of its test for duty drawback adjustments without providing Rajinder sufficient notice.  In the Verification Outline, Rajinder argues, Commerce requested Rajinder document a link between rebate and import duty; however, in *Final Results,* Commerce stated Rajinder had to provide proof demonstrating a link between the exempted import duty and the exportation of the merchandise.  Notwithstanding the changed proof requirements, however, Rajinder argues it satisfied the revised test with the materials provided prior to verification.

Regarding the second prong, Rajinder argues the record proves Rajinder established that it had sufficient imports for the adjustment claimed. The amount of raw material imported during the relevant time period, according to Rajinder, is significantly greater than the amount of finished pipe exported into the United States. Therefore, the record shows sufficient imports to satisfy the amount of duty drawback adjustment claimed.

Although Rajinder argues the import pages of the DEEC book were not necessary to satisfy Commerce's duty drawback test, it submitted them on January 14 and 20, 1998. Rajinder claims that if Commerce deemed the DEEC book's import pages to be essential, it should have informed Rajinder that without the pages the drawback adjustment would be denied. Otherwise, Rajinder had no way of knowing the importance of those pages because they were not *specifically* requested, and they were not logically necessary to prove Rajinder's case. Moreover, Rajinder did submit the DEEC import pages when the pages were returned from Indian Customs. Given that the documentation Commerce sought was with Indian Customs at the time Commerce was seeking it, Rajinder argues that once the documentation became available, Commerce should have relied on regulations which allow the Secretary of Commerce to take information at any time.[4] Nevertheless, Rajinder claims it proved all versions of Commerce's test with the material already in the record.

B.      *Defendant*

---

[4] The regulation to which Rajinder refers states, "the Secretary may request any person to submit factual information at any time during a proceeding." 19 C.F.R. § 353.31(b)(1) (1997).

Defendant, United States, contends Commerce's denial of plaintiff's claim for a duty drawback adjustment was justified because Rajinder did not satisfy the two-prong test. Specifically, Rajinder failed to demonstrate the required link between the import duty and the drawback received and to prove that it imported sufficient material to account for the drawback it received.  Defendant argues in circumstances where the duty drawback system involves the non-collection of duties, Commerce has interpreted the first prong of the test to require a showing of whether "import duties were actually not collected by reason of the exportation of the subject merchandise to the United States.[5]" (Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record (COM) at 16 (citation omitted).)

Defendant claims Rajinder's documents provided insufficient proof of a link between the import duty and the duty drawback.  The Advance Licenses merely allowed plaintiff to *request* an exemption from import duties for steel and zinc, and therefore were not by themselves proof from Indian Customs that there was a link between the actual exempted import duties and the exported merchandise.  Moreover, defendant points out that the Court has held "the burden of producing information to assist Commerce in determining whether a respondent is entitled to a duty drawback adjustment lies with the respondent, not Commerce."  (COM at 20 (citing *Primary Steel, Inc. v. United States*, 17 CIT 1080, 1090, 834 F. Supp. 1374, 1383 (1993) (citation

---

[5] In its brief in opposition, defendant appears to quote the language of the drawback statute, 19 U.S.C. § 1677a(c)(1)(B), in referring to prong one of the standard two-prong test for duty drawback.  In footnote three of defendant's brief, however, defendant uses different language to describe what Commerce examines in prong one in non-collection programs. Commerce examines "whether there is a link between the non-collected duty and the exportation of merchandise."  (Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record (COM) at 16 n.3.)

omitted)).)  Defendant also argues Commerce properly rejected plaintiff's post-verification submissions because they were submitted after the deadline for the submissions established by regulation.

C.      *Defendant-Intervenors*

Defendant-Intervenors, Allied, oppose plaintiff's Motion for Judgment Upon An Agency Record because, according to Allied, Commerce's rejection of Rajinder's claimed duty drawback adjustment is supported by substantial evidence and is otherwise in accordance with law.  Allied asserts Rajinder failed to satisfy prong one of Commerce's test because it failed to explain the nature of its participation in the drawback scheme, and it did not establish a direct link between export sales and the non-collection of import duties.  A detailed explanation was necessary because Rajinder had yet to make any importations resulting in the non-collection of import duties, and, on its face, the statute does not permit an adjustment under those circumstances.  Regarding prong two, Allied asserts that Rajinder failed to demonstrate it imported sufficient hot-rolled  steel to correspond to the exports on which it was seeking an adjustment.  Additionally, Allied notes that Rajinder had not submitted any documentation showing Rajinder had actually imported zinc during the period of review.  Allied also asserts that the DEEC book import pages were submitted untimely, were illegible, and could not be verified.  Finally, Allied asserts that Rajinder was on notice that it had to submit such documentation but chose not to submit the import pages.

STANDARD OF REVIEW

When reviewing a final determination by Commerce, this Court must sustain the

determination unless it is "unsupported by substantial evidence on the record, or otherwise not in

accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994).  Substantial evidence is that which

"a reasonable mind might accept as adequate to support a conclusion."  *Universal Camera Corp.*

*v. NLRB*, 340 U.S. 474, 477, 71 S. Ct. 456, 459, 95 L. Ed. 456 (1951) (citation omitted), *quoted*

*in Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).  For the

purposes of judicial review, the evidence is limited to the administrative record.  *See Toyota*

*Motor Sales, U.S.A., Inc. v. United States*, 15 F. Supp. 2d 872, 877 (CIT 1998).  Whether

Commerce properly excluded plaintiff's untimely submissions from the administrative record

depends on "whether Commerce complied with the statute defining the administrative record for

review."  *Kerr-McGee Chem. Corp. v. United States*, 955 F. Supp. 1466, 1471 (CIT 1997).

DISCUSSION

A.      *The Scope of the Administrative Record*

Rajinder argues Commerce should have accepted its submissions of January 1998, which

included the DEEC import pages, and considered the documents as part of the administrative

record.  Plaintiff's argument lacks merit.  Factual information for Commerce's

consideration in an administrative review:

> shall be submitted not later than: . . . the earlier of the date of publication of notice of
> preliminary results of review or 180 days after the date of publication of notice of
> initiation of the review; . . . (3) The Secretary will not consider in the final determination
> or the final results . . . any factual information submitted after the applicable time limit.

19 C.F.R. § 353.31(a)(1), (3) (1997).  Previously, this Court has sustained Commerce's rejection

of new factual information submitted untimely pursuant to its regulations.  *See, e.g., Mantex, Inc. v. United States*, 17 CIT 1385, 1409, 841 F. Supp. 1290, 1310 (1993).  As the January submissions were filed after the December 16, 1997 deadline[6] and as plaintiff admits the documents were submitted untimely[7], this Court finds Commerce properly rejected the January submissions as untimely.

Notwithstanding the untimeliness of the submissions, Rajinder argues Commerce should have accepted the documents under 19 C.F.R. § 353.31(b)(1) (1997) which allows for the submission of information "at any time" during the procedure.  This regulation, however, only allows for the submission of information "at any time," when Commerce specifically "requests" a party to submit factual information.[8]  Rajinder admits Commerce did not specifically request the January submissions.[9]  Therefore, this Court finds Commerce properly rejected the January submissions as untimely.

---

[6] Defendant states in its brief that "Rajinder's deadline for submission of factual information was December 16, 1997, which was 180 days after publication of the notice of initiation."  (COM at 13.)

[7] Rajinder specifically states it "cannot deny that, although it did submit the above-noted information and documentation before the preliminary results, it did not submit them within 180 days of the notice of initiation."  (Plaintiff Rajinder Pipes Ltd.'s Reply to Defendant's and Defendants-Intervenors' Oppositions to Plaintiff's Motion for Judgment on the Agency Record Pursuant to Rule 56.2 at 14.)

[8] 19 C.F.R. § 353.31(b)(1) (1997) states, "[n]otwithstanding paragraph (a) of this section [*i.e.,* the provision identifying the 180 day submission requirement], the Secretary may request any person to submit factual information at any time during a proceeding."

[9] Rajinder states, "the DEEC import pages were not specifically requested." (Memorandum of Points and Authorities in Support of Plaintiff's Motion for Judgment on the Agency Record Pursuant to Rule 56.2 (RAJ) at 30.)

B.       *Duty Drawbacks Under the Tariff Act of 1930*

The antidumping laws of the United States allow Commerce to issue antidumping duty

orders upon imported merchandise which is sold or likely to be sold at less than fair value.  19

U.S.C. § 1673 (1994).  In making its determination, whether the merchandise is sold in the United

States at less than fair value, Commerce must compare the price of the merchandise in the United

States (export price) and the price of the merchandise in a foreign market (normal value).[10]  *See*

*Huffy Corp. v. United States*, 10 CIT 214, 215, 632 F. Supp. 50, 52 (1986) (citing 19 U.S.C. §

1673 (1982)).  The export price is a value calculated by considering the price at which the

merchandise is exchanged between parties in arm's length transactions and any adjustments which

are necessary so "that [the] value [of the export price and normal value] can be fairly compared

on an equivalent basis."  *Smith-Corona Group v. United States*, 713 F.2d 1568, 1571-73 (Fed.

Cir. 1983).  If Commerce determines that the normal value exceeds the export price by a certain

percentage, that difference or margin is the basis upon which Commerce assesses antidumping

duties on investigated entries.  *See* 16 U.S.C. § 1675(a)(2) (1994); *Far East Mach. Co. v. United*

*States*, 12 CIT 428, 430, 688 F. Supp. 610, 611 (1988).


One type of adjustment to export price is known as a duty drawback.  Typically, this

adjustment increases the export price in light of export rebate programs undertaken by foreign

countries to boost exports and increase manufacturers' cost competitiveness in foreign markets.

---

[10] In 1994, the Uruguay Round Agreements Act substituted the term "export price" for the
term "United States price" and the term "normal value" for the term "foreign market value."  *See*
*Uruguay Round Agreements Act*, Pub. L. No. 103-465, §§ 233(a)(1), (2)(A), 108 Stat. 4809,
4898 (Dec. 8, 1994).

*See* Chiang-feng Lin, *Investment in Mexico:  A Springboard Toward the NAFTA Market–An Asian Perspective*, 22 N.C. J. INT'L L. & COM. REG. 73 (1996).  This upward adjustment to export price reduces any margin on which antidumping duties are assessed, thereby reducing or eliminating antidumping duties.  Under a standard duty drawback or rebate program, import duties paid on merchandise that will ultimately be exported to the United States are rebated to the exporter by the foreign country upon exportation.  The export price then may be adjusted by "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States."  19 U.S.C. § 1677a(c)(1)(B) (1994).

In order to receive a duty drawback adjustment under a standard rebate program, Commerce has interpreted the statute to require an importer to satisfy a two-prong test.  This Court has upheld Commerce's interpretation of the statute as requiring that:

> [When] determining whether such an adjustment should be made, Commerce considers (1) whether the import duty and rebate are directly linked to, and dependent upon, one another; and (2) whether the company claiming the adjustment can show that there were sufficient imports of the imported raw materials to account for the drawback received on the exported product.

*E.I. DuPont de Nemours & Co. v. United States*, 17 CIT 1266, 1271, 841 F. Supp. 1237, 1242 (1993) (quoting *Carlisle Tire & Rubber Co. v. United States*, 11 CIT 168, 171, 657 F. Supp. 1287, 1289 (1987)).  In applying this test in the context of a standard rebate program, Commerce has, in the first prong of the test establishing a link between an import duty and a rebate, focused "on the drawback program itself, [] requir[ing] a showing that entitlement to rebate is dependent upon the payment of duties."  *Far East*, 688 F. Supp. at 612.  The second prong, demonstrating

sufficient imports of imported raw materials to account for the duty drawback received on the exports of the manufactured product, concerns "the specific application of the drawback program to the firm claiming the adjustment." *Id.*

As previously stated, the drawback statute, 19 U.S.C. § 1677a(c)(1)(B), also allows a duty drawback adjustment to export price for an amount of any import duty "which [may] have not been collected, by reason of the exportation of the subject merchandise to the United States." *Id.*; *see, e.g.*, *Carbon Steel Wire Rope From Mexico*, 63 Fed. Reg. 46753, 46756 (Dep't Commerce 1998) (final admin. review) (stating petitioner's argument that the exporter has to actually pay and receive a rebate in order to qualify for duty drawback adjustment is contrary to the plain language of the statute and the Department's long standing practice). Under this type of non-collection program, countries allow duty free importation of goods if those goods will ultimately be used in exports. Commerce has recognized this type of non-collection of duties program as having the same purpose as that of a standard rebate program. Specifically, Commerce has noted that the Indian non-collection program, which is facilitated by Advance Licenses, is like a rebate program because both programs "allow companies to import, net of duty, raw materials which are physically incorporated into the exported products." *Certain Iron-Metal Castings From India*, 62 Fed. Reg. 32297, 32306 (Dep't Commerce 1997) (final CVD admin. review); *see also Certain Iron-Metal Castings From India*, 60 Fed. Reg. 44843, 44846 (Dep't Commerce 1995) (final CVD admin. review); *Steel Wire Rope From India*, 56 Fed. Reg. 46292, 46293 (Dep't Commerce 1991) (final affirmative CVD det.); *Bulk Ibuprofen From India*, 56 Fed. Reg. 66432, 66433 (Dep't Commerce 1991) (prelim. affirmative CVD det.). Commerce,

in making its adjustment determinations on non-collection programs, has applied the same two-prong duty drawback test as it has in standard rebate programs. *See Certain Welded Carbon Standard Steel Pipes and Tubes From India*, 62 Fed. Reg. 47632, 47633 (Dep't Commerce 1997) (final AD admin. rev.).

Plaintiff now contends that it did not receive adequate notice that Commerce specifically needed the DEEC import pages to satisfy prong one of Commerce's duty drawback test. It is undisputed, however, that plaintiff did have adequate notice that Commerce required satisfaction of the two-prong test in order to receive its requested duty drawback. As previously stated, Commerce has previously applied the two-prong test in prior cases involving Rajinder and the Indian Advance License program. *See id*. Moreover, in this case, Commerce repeatedly requested Rajinder to satisfy the two-prong test. Thus, plaintiff cannot claim it lacked adequate notice as to what proof was required. Further, with respect to the specificity of Commerce's request, it is not Commerce's job to identify the documents necessary for satisfaction of the two-prong test. It is well established that the burden of producing information to satisfy Commerce's test lies with the respondent not Commerce. *See, e.g., Primary Steel, Inc. v. United States*, 17 CIT 1080, 1090, 834 F. Supp. 1374, 1383 (1993) (citing *Tianjin Mach. Import & Export Corp. v. United States*, 16 CIT 931, 936, 806 F. Supp. 1008, 1015 (1992)). This Court finds Rajinder's argument regarding notice is without merit.

C.      *Commerce's Final Determination Is Supported by Substantial Evidence*

In this case, Commerce again considered duty drawback adjustment under the Indian non-

collection program. In making its determination, Commerce applies the standard two-prong duty drawback test. *See Final Results*, 63. Fed. Reg. at 32829.

With respect to Rajinder's zinc imports, the Court finds Commerce's determination that Rajinder did not qualify for an adjustment is supported by substantial evidence on the record. By its own admission, Rajinder did not submit timely documentation to substantiate its importation of zinc during the period of review in Commerce's investigation.[11] (*See* RAJ at 35.) Consequently, Rajinder was ineligible for a duty drawback adjustment regardless of whether zinc imports were exported to the United States pursuant to its Advance License.

With respect to Rajinder's steel imports, Commerce denied Rajinder's request for duty drawback because it failed to establish a "direct link between the import duty and the drawback Rajinder claimed it received." *Final Results,* 63 Fed. Reg. at 32829. Because the record submitted by Rajinder does not show the necessary link, this Court finds Commerce's determination is supported by substantial evidence on the record. The record evidence submitted by Rajinder indicates that an Indian Advance License grants Rajinder twelve months in which to export the finished product and import the raw material into India or face a duty. The DEEC book's export pages show that goods conforming to those specified on the license were exported under Rajinder's Advance License. The Indian bills of entry show that steel conforming or similar to the type of steel allowed to enter India duty free under Rajinder's Advance License, in fact,

---

[11] Substantiation of Rajinder's claim for duty drawback adjustment relating to its zinc imports was allegedly contained in the DEEC Book import pages and other information that were appropriately rejected by Commerce as untimely. *See supra* Part A; (*see* RAJ at 35.).

entered India duty free.  In sum, the documents show that Rajinder imported raw material into

India duty free and that Rajinder, independently, exported finished products pursuant to an

Advance License.  These documents *do not* show, however, that the steel imported duty free by

Rajinder was "directly linked to, and dependent upon" exportation in accordance with Rajinder's

advance licenses.  *E.I. DuPont de Nemours*, 841 F. Supp. at 1242 (citing *Carlisle Tire,* 657 F.

Supp. at 1289).


On the basis of the documents submitted by Rajinder, Commerce determined that the

evidence was not sufficient for Rajinder to satisfy prong one of the test for duty drawback

adjustments.  This Court agrees.  So long as a reasonable mind can accept the evidence as

adequate to support Commerce's conclusions, the Court must defer to Commerce's judgment

regarding the evidence.  *See Rhone-Poulenc, Inc. v. United States*, 20 CIT 573, 575, 927 F.

Supp. 451, 454 (1996).  Therefore, because this Court finds there was adequate evidence to

support Commerce's conclusion regarding the first prong of the test, this Court holds that

Commerce's denial of Rajinder's request for a duty drawback adjustment is supported by

substantial evidence on the record and is otherwise in accordance with law.


Although the Court sustains Commerce's final determination because the Court finds there

was substantial evidence on the record to support Commerce's conclusion that Rajinder failed to

prove a link between the import duty and drawback benefit received, the Court notes

Commerce's enunciation and application of its two-prong test in this instance is less than a model

of clarity.  Here, Commerce appeared to vary the proof required for the separate prongs of its test

between its Preliminary Results Memorandum and its *Final Results*.[12]  In its Preliminary Results

Memorandum, Commerce appears to request Rajinder submit general information regarding

India's duty drawback program for prong one and Rajinder-specific information, *e.g.,* the

untimely information which included the DEEC import pages, for prong two.  In the *Final*

*Results*, however, Commerce appears to find that the DEEC import pages, previously sought to

prove prong two, are needed to prove prong one of the test.  While the DEEC import pages

appear to be a means of proving the necessary link under prong one, the Court suggests

---

[12] In its Preliminary Results Memorandum, Commerce specifically states with respect to prong one:

> Rajinder was not able to provide record evidence that the import duty and the drawback are directly related to one another.  In order to satisfy this requirement, Rajinder could have supplemented the record with documentation that demonstrates the manner in which the Indian Advanced Licensing system works (i.e., historically illustrate the link between the rebate received upon exportation of the merchandise and the import duty from which the company is exempted from paying for products that have been or will be imported in the future . . . ).

(Preliminary Results Memorandum, PA at 63.) (emphasis omitted).)  With respect to prong two, Commerce stated:

> Rajinder attempted to supplement the record on January 20, 1998, with evidence that it received sufficient amounts of imports of the imported raw materials to account for the drawback received on the exported merchandise.  However, the submission received was not submitted in a timely manner . . . .

(Id.)

   In its *Final Results*, however, Commerce stated that an importer, under the Indian Advance License program, must show that it "prove[d] to Indian Customs that the [imported duty free] goods were used in a product that was or will be exported or the importer of the goods will be liable for the foregone duty."  *Final Results,* 63 Fed. Reg. at 32929.  Commerce then stated plaintiff needed to provide the "DEEC book" for "without such information there is no established link between the import duty and the drawback."  *Id.*

Commerce better clarify the nature of the proof required for each prong in the future.

Since Rajinder failed the first prong of Commerce's test, it is not necessary for the Court to examine Rajinder's compliance with the second prong, as both prongs of the test must be met in order to receive a duty drawback adjustment.

CONCLUSION

For the reasons discussed above, this Court denies plaintiff's Motion for Judgment Upon An Agency Record. This Court finds that Commerce properly rejected as untimely the January 1998 submissions pursuant to administrative regulations. This Court also finds that Commerce's final determination not to grant a duty drawback adjustment to Rajinder is supported by

substantial evidence on the record and is otherwise in accordance with law. Accordingly, the Court dismisses this action.

_____
Gregory W. Carman
Chief Judge

Dated: September 17, 1999
        New York, New York